# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

**UNITED STATES OF AMERICA**

**v.**                                                            **Criminal No. 3:17cr3**

**SHAPAT AHDAWAN NABAYA,**
*also known as Norman Abbott,*

**Defendant.**

## MEMORANDUM OPINION

This matter comes before the Court on two motions: (1) Defendant Shapat Ahdawan Nabaya's Motion to Dismiss Indictment, (ECF No. 21); and, (2) Nabaya's Motion for Designation of Discovery, Disclosure of Transcripts, and Request for Pretrial Conference[1] (the "Motion for Designation of Discovery and Disclosure of Transcripts"), (ECF No. 19).[2] The United States has responded to both motions, (ECF Nos. 25, 26), and Nabaya has replied, (ECF Nos. 27, 28).[3] The Court heard oral argument on April 11, 2017. Accordingly, the matters are ripe for disposition. For the reasons that follow, the Court will: (1) deny the Motion to Dismiss Indictment; and, (2) deny the Motion for Designation of Discovery and Disclosure of Transcripts.

---

[1] On February 28, 2017, the Court held a pretrial conference pursuant to Federal Rule of Criminal Procedure 17.1, which provides that "the court may hold one or more pretrial conferences to promote a fair and expeditious trial." Accordingly, Nabaya's request for a pretrial conference is now moot.

[2] When referenced collectively, the Court will refer to the pending motions as the "Pretrial Motions."

[3] On March 21, 2017, the United States filed a motion requesting leave to file a surreply "to clarify two sentences in [its] response to the Defendant's Motion to Dismiss Indictment." (Mot. Leave to File Surreply 1, ECF No. 34.) Nabaya did not object to this request. In the interest of justice and for good cause shown, the Court will grant the United States' Motion for Leave to File Surreply.

## I. Background[4]

On April 4, 2017, a Grand Jury sitting in the Eastern District of Virginia returned a two-count indictment (the "Superseding Indictment") against Nabaya.[5] (ECF No. 43.) The Superseding Indictment recounts the history of the various civil lawsuits that serve as the backdrop for the charges now before the Court. (Superseding Indictment ¶¶ 1–20.) Those lawsuits, initiated by Nabaya, followed an Internal Revenue Service ("IRS") levy of Nabaya's retirement pension. (*Id.*)

Count One of the Superseding Indictment alleges that Nabaya retaliated against a federal officer by false claim, in violation of 18 U.S.C. § 1521.[6] The United States asserts that Nabaya filed a false and retaliatory mechanic's lien alleging that Wally Stark, an IRS official, unlawfully restrained Nabaya's pension and owed Nabaya $6,564. Count Two of the Superseding Indictment alleges that Nabaya made a false statement in bankruptcy, in violation of 18 U.S.C.

---

[4] For purposes of the Motion to Dismiss Indictment, the Court relies on the facts as alleged in the indictment. *See United States v. Rosen*, 445 F. Supp. 2d 602, 607 n.2 (E.D. Va. 2006); *see also United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012) ("In evaluating a Rule 12 motion to dismiss, a district court must accept as true the factual allegations set forth in the indictment." (citations omitted)).

[5] The parties briefed the Motion to Dismiss Indictment before the Grand Jury returned the Superseding Indictment. The Superseding Indictment, however, did not deviate substantively from the Indictment. At oral argument, counsel for both parties agreed that the Court should consider the briefing already submitted when determining whether to dismiss the Superseding Indictment.

[6] Section 1521 states:

Whoever files, attempts to file, or conspires to file, in any public record or in any private record which is generally available to the public, any false lien or encumbrance against the real or personal property of an individual described in section 1114, on account of the performance of official duties by that individual, knowing or having reason to know that such lien or encumbrance is false or contains any materially false, fictitious, or fraudulent statement or representation, shall be fined under this title or imprisoned for not more than 10 years, or both.

18 U.S.C. § 1521.

§ 152(3).[7]  The United States contends that Nabaya falsely stated in a bankruptcy filing that Stark owed him $50,000 related to a personal injury.

Nabaya was arrested on February 2, 2017.  On February 6, 2017, the parties appeared before the Honorable David J. Novak, United States Magistrate Judge, for Nabaya's detention hearing.[8]

## II. Hearing on the Pretrial Motions

On April 11, 2017, Nabaya, his then-counsel, and the attorneys for the United States appeared in open court for arraignment on the Superseding Indictment and a hearing on the Pretrial Motions.[9]  Before argument commenced, the Court addressed various administrative and procedural matters.

---

[7] Section 152(3) provides, in part:

> A person who . . . knowingly and fraudulently makes a false declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, in or in relation to any case under title 11 . . . shall be fined under this title, imprisoned not more than 5 years, or both.

18 U.S.C. § 152(3).

[8] Prior to the hearing on the Pretrial Motions, Judge Novak addressed the United States' concern that Nabaya had a conflict with his attorneys arising out of a lawsuit filed by Nabaya in the United States District Court for the District of Columbia. (March 27, 2017 Mem. Order, ECF No. 39.) Judge Novak found that no conflict of interest exists. (*Id.* at 9.) Judge Novak also determined that Nabaya's lawsuit did not violate the conditions of his release. (*Id.* at 4–5.) After briefing by both parties, however, and at the request of the United States, Judge Novak modified Nabaya's conditions of release. (April 7, 2017 Mem. Order, ECF No. 51.) Judge Novak ordered that Nabaya "may not file any lawsuit in any federal court against any federal official that concerns this criminal prosecution without first obtaining leave." (*Id.* at 1.)

[9] The Court initially scheduled Nabaya's jury trial for April 11, 2017. On March 30, 2017, the Court suspended the jury trial pending resolution of the Pretrial Motions. (March 30, 2017 Order, ECF No. 40.) In that Order, the Court held that its decision did not implicate Nabaya's right to a speedy trial because the delay in trial date flowed from the pendency of motions filed by Nabaya. (*Id.* at 2.) Despite this written order, Nabaya argued in open court that his speedy trial rights had been violated. The Court overruled that objection.

First, the Court permitted Nabaya's court reporter, Juan Ortega, to sit in on and transcribe the hearing.[10] Nabaya brought the court reporter without notice, even to his own attorneys. The Court admonished Ortega that he could not record the hearing because the Local Criminal Rules of the United States District Court for the Eastern District of Virginia prohibit the recording of judicial proceedings. *See* Local Crim. R. 53(A) ("The . . . operation of tape recorders in the courtroom or its environs, . . . during the progress of or in connection with judicial proceedings . . . is prohibited."). Nabaya objected to the Court's prohibition on the use of an electronic recording device in the courtroom on First Amendment grounds. Relying on a federal decision that rejected a similar challenge to a court's "Electronics Ban Order," the Court overruled that general objection. *See McKay v. Federspiel*, No. 14cv10252, 2014 WL 1400091, at *5 (E.D. Mich. Apr. 10, 2014) ("[A]lthough the public has a First Amendment right to attend and observe courtrooms, the Supreme Court has explicitly disavowed that the media—and by extension, the public—has a First Amendment right to use electronic equipment in the courtroom.").

The Court also informed Nabaya and Ortega that any transcript that Ortega produced would not constitute an official transcript of the proceeding. *See* 28 U.S.C. § 753 ("The transcript in any case certified by the reporter or other individual designated to produce the record shall be deemed prima facie a correct statement of the testimony taken and proceedings had. No transcripts of the proceedings of the court shall be considered as official except those made from the records certified by the reporter or other individual designated to produce the record."). The Court warned Nabaya that, should he represent to any court or court official that his personal transcript was "official," he would be subject to a contempt citation. The Court

---

[10] The record is not clear how Nabaya qualified for court-appointed counsel, but then found the financial resources to retain a personal court reporter to transcribe the hearing on his Pretrial Motions.

advised Nabaya and Ortega that if Ortega wished to appear in the capacity of a court reporter again, Nabaya must request permission by filing. The Court also explained that Ortega would need to acquire specific permission from the Court in order to bring any electronic device into any judicial proceedings.

Second, the Court addressed Nabaya's request to proceed *pro se*. Nabaya apprised the Court that his attorneys refused to submit, on his behalf, myriad filings to the Court.[11] Nabaya specifically explained that his attorneys would not advance arguments regarding his status as a sovereign citizen, as well as other claims regarding the Court's jurisdiction and constitutional precepts. A breakdown in communication between Nabaya and his counsel, confirmed by counsel, required the Court to find that then-counsel could not provide adequate representation, even in standby status.

The Court thoroughly explained to Nabaya the risks associated with proceeding *pro se*. Despite the Court's warnings, Nabaya elected to waive his right to counsel. The Court found that Nabaya understands the charges against him, the penalties he faces, and the perils of proceeding *pro se*. The Court then informed Nabaya that it would appoint standby counsel at a hearing on Friday, April 14, 2017. The Court rescheduled that hearing for Wednesday, April 19, 2017. (ECF No. 53.)

Third, the Court overruled Nabaya's request that the undersigned recuse herself. As held by Judge Novak in response to a similar request by Nabaya, "[t]he D.C. Lawsuit does not

---

[11] The Court previously rejected various filings submitted by Nabaya through hand-delivery to the Clerk's Office. (*See, e.g.*, ECF Nos. 22, 23.) At the Pretrial Conference on February 28, 2017, the Court informed Nabaya that if he had counsel, the Court would accept filings only through his attorneys. At that time, Nabaya expressed his desire to appear through court-appointed counsel. Despite instruction to the contrary, Nabaya continued to pepper the Court with countless documents. The Clerk's Office did not docket these papers, which were submitted by Nabaya himself, and, instead, marked them as "Received."

constitute grounds for the undersigned's recusal, as Defendant 'cannot be allowed to create the basis for recusal by [his] own deliberate actions.'" (April 7, 2017 Mem. Order 3 n.1 (quoting *United States v. Owens*, 902 F.2d 1154, 1156 (4th Cir. 1990).) "Otherwise, defendants could easily engage in inappropriate judge shopping." (*Id.* (citing *Owens*, 902 F.2d at 1156; *Jones v. Pittsburgh Nat. Corp.*, 899 F.2d 1350, 1355–56 (3d Cir. 1990) (finding recusal not required after litigant filed a judicial complaint against presiding judge); *United States v. Studley*, 783 F.2d 934, 940 (9th Cir. 1986) ("A judge is not disqualified by a litigant's suit or threatened suit against him."); *United States v. Grismore*, 564 F.2d 929, 933 (10th Cir. 1977) ("A judge is not disqualified merely because a litigant sues or threatens to sue him.")).)

Fourth, after oral argument on the Pretrial Motions, the Court articulated to Nabaya numerous instructions and rules governing decorum in the courtroom.[12] The Court warned Nabaya that failure to comply with these instructions and rules could result in waiver of his right to proceed *pro se* or waiver of his right to remain in the courtroom during his trial.

Fifth, the Court admonished Nabaya that his frivolous arguments did not constitute an efficient use of his or the Court's resources. Despite this misuse of resources, the Court allowed Nabaya to speak on his own behalf both when he had counsel and after he terminated the attorney-client relationship. To the extent Nabaya's arguments or "motions" were discernible, the Court ruled on each issue Nabaya raised during this lengthy hearing.[13] The Court indicated

---

[12] The Court has attached these rules as Appendix A to this Memorandum Opinion.

[13] For instance, the Court overruled objections, rejected arguments, or denied motions that appeared to flow from Nabaya's unfounded, sovereign citizen-based theories. The core of those theories rests on Nabaya's claim that he could choose to opt out of this Court's jurisdiction by refusing, or having refused, to enter into a contract that gives this Court jurisdiction. The Court has soundly rejected Nabaya's nonsensical attempt to establish that he is not the person named in the Superseding Indictment or that he, his "corporation," or whatever entity he claims stands in the courtroom falls outside this Court's purview. The Court has told Nabaya that,

6

that it has been patient with Nabaya's imprudent pretrial strategy, but that frivolous motions and

arguments would not be tolerated further. Like all other litigants in this Court, Nabaya must

submit any motion pursuant to a rule, with a proper caption, and with reference to applicable

law. *See* Local R. Crim. P. 47(F)(1) ("All motions . . . shall be accompanied by a written brief

setting forth a concise statement of the facts and supporting reasons, along with a citation of the

authorities upon which the movant relies.").

Finally, the Court arraigned Nabaya on the Superseding Indictment. Because Nabaya

refused to acknowledge this Court's jurisdiction over him, he did not respond to the Court's

---

should he wish to challenge this Court's rulings on those issues, he should do so, on appeal, at the conclusion of this case.

Thus, Nabaya's endeavor, in the first instance, to dismiss his case pursuant to Article I, § 10 of the United States Constitution, seemingly because that constitutional provision limits the powers of the states through the Contracts Clause, the Import-Export Clause, and the Compact Clause, utterly founders. Any contention by Nabaya that he can cast off this Court's jurisdiction because he has not "contracted" to it misreads the law entirely: that constitutional provision in no way speaks to this Court's jurisdiction to hear the criminal charges brought against Nabaya.

Second, Nabaya's claim that the Court lacks jurisdiction under the Uniform Commercial Code ("UCC") equally fails. The UCC is a uniform set of laws regarding sales and other commercial transactions that harmonizes those laws, through adoption, across state lines. Nothing supports Nabaya's argument that the UCC provides a basis, under contract principles or otherwise, for him to reject this Court's jurisdiction in his criminal case.

Finally, Nabaya's reference to 28 U.S.C. § 3002(15), which, under that statutory scheme, defines the United States, in part, as "a Federal corporation," does not divest this Court of jurisdiction. Section 3001 *et seq.* governs procedures for federal debt collection, not this criminal case. Nothing in that provision supports any claim, contract-based or otherwise, that Nabaya sits beyond the jurisdiction of this Court.

The Court has repeatedly advised Nabaya that these sovereign citizen arguments have no basis in fact or law. Moreover, the Court has warned—and does so again—that continued pursuit of frivolous or already-denied theories could be so disruptive as to risk a finding of contempt or the loss of his right to proceed *pro se. See Indiana v. Edwards,* 554 U.S. 164, 171 (2008) (noting that the right of self-representation "is not absolute"); *see also Faretta v. California,* 422 U.S. 806, 834 n.46 (1975) (concluding that "[t]he right of self-representation is not a license to abuse the dignity of the courtroom" or "a license not to comply with relevant rules of procedural and substantive law" and that "serious and obstructionist conduct" can result in the termination of pro se status); *United States v. Frazier-El,* 204 F.3d 553, 560 (4th Cir. 2000) (noting that "[t]he right [to self-representation] does not exist . . . to be used as a tactic for delay, for disruption, for distortion of the system, or for manipulation of the trial process").

inquiry as to his guilt on both Counts One and Two. The Court entered a not guilty plea on his

behalf. His objection to the Court doing so was overruled.

### III. Analysis: Motion to Dismiss Indictment[14]

Nabaya submits various arguments in support of the Motion to Dismiss Indictment.

Nabaya argues that the Court must dismiss Count One for any of four reasons: (1) 18 U.S.C.

§ 1521 violates the First Amendment to the United States Constitution[15] because Section 1521

restricts speech based on content and must be limited to statements made with "actual malice";

(2) Count One violates the Petition Clause of the First Amendment[16] and the Due Process Clause

of the Fifth Amendment;[17] (3) Count One fails to state the essential elements of the crime; and,

(4) Count One is duplicitous. Regarding Count Two, Nabaya contends that it fails to state the

essential elements of the crime. Nabaya's arguments do not persuade. For the reasons

articulated below, the Court will deny the Motion to Dismiss Indictment.

#### A.    Section 1521 Does Not Violate the First Amendment Right to Free Speech

The Court will deny the Motion to Dismiss Indictment as it pertains to Nabaya's assertion

that Count One violates the First Amendment right to free speech. Nabaya's briefing and *amici*

---

[14] At oral augument, the Court permitted Nabaya's previous counsel to argue the Pretrial Motions as *amici curiae*. Although those attorneys no longer represented Nabaya, the Court determined, and Nabaya agreed, that it was in his best interest for his previous counsel to argue the motions that they drafted and submitted to the Court on Nabaya's behalf. In this Memorandum Opinion, the Court addresses the arguments presented by Nabaya's previous counsel in the written motions as Nabaya's own. Indeed, those filings were submitted while Nabaya still had representation. To the extent Nabaya's previous counsel supplemented those arguments at the hearing in their capacity as *amici curiae,* the Court will make note.

[15] "Congress shall make no law . . . abridging the freedom of speech . . . ." U.S. Const. amend. I.

[16] "Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. amend. I.

[17] "No person shall . . . be deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V.

*curiae's* arguments in open court suggest two theories underlying this position. First, Nabaya contends that 18 U.S.C. § 1521 violates the First Amendment because it restricts speech based on content. Second, Nabaya argues that § 1521 is impermissibly overbroad.[18] Both arguments fail.

### 1.    Facial Challenge Standard

The Court construes Nabaya's challenge as a facial one.[19] The Supreme Court of the United States recognizes two types of facial challenges to a law's constitutionality. Ordinarily, a party "can only succeed in a facial challenge by 'establish[ing] that no set of circumstances exists under which the [law] would be valid,' *i.e.*, that the law is unconstitutional in all of its applications." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (first alteration in original) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). But the Supreme Court also recognizes a facial challenge "in the First Amendment context under which a law may be overturned as impermissibly overbroad because a 'substantial number' of its applications are unconstitutional, 'judged in relation to the statute's plainly legitimate sweep.'" *Id.* at 449 n.6 (quoting *New York v. Ferber*, 458 U.S. 747, 769–71 (1982)). The Court has "provided this expansive remedy out of concern that the threat of enforcement of an overbroad law may deter or 'chill' constitutionally protected speech—especially when the overbroad statute imposes criminal sanctions." *Virginia v. Hicks*, 539 U.S. 113, 119 (2003) (citation omitted).

Under either type of challenge, this Court must heed guidance from the Supreme Court, which disfavors facial challenges "for several reasons." *Wash. State Grange*, 552 U.S. at 450;

---

[18] Nabaya did not advance an overbreadth argument in his Motion to Dismiss Indictment. The United States, nonetheless, interpreted Nabaya's facial challenge as one of overbreadth. In his reply brief, Nabaya argued that, even if the Court determined that "§ 1521 is content-neutral, then the test becomes whether the statute presents 'a substantial risk that application of the provision will lead to suppression of speech.'" (Reply Mot. Dismiss Indictment 5 (citation omitted)). The Court, accordingly, will address both arguments.

[19] At oral argument, *amici curiae* concurred with this characterization.

*see also Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973) (explaining that application of the overbreadth doctrine is done "sparingly and only as a last resort"). Among them, "[a] ruling of unconstitutionality frustrates the intent of the elected representatives of the people." *Id.* at 451 (quoting *Ayotte v. Planned Parenthood of N. New Eng.*, 546 U.S. 320, 329 (2006)). "Facial challenges also run contrary to the fundamental principle of judicial restraint that courts should neither 'anticipate a question of constitutional law in advance of the necessity of deciding it' nor 'formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.'" *Id.* (citation omitted). Further, facial challenges "raise the risk of 'premature interpretation of statutes on the basis of factually barebones records.'" *Id.* at 450 (quoting *Sabri v. United States*, 541 U.S. 600, 609 (2004)). Bearing these policies in mind, the Court addresses Nabaya's free-speech argument.

### 2. Section 1521 Does Not Unconstitutionally Restrict Speech Based on Content

Nabaya contends that § 1521, as written, impermissibly restricts speech based on content. "'[A]s a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content.'" *United States v. Alvarez*, 132 S. Ct. 2537, 2543 (2012) (quoting *Ashcroft v. ACLU*, 535 U.S. 564, 573 (2002) (internal quotation marks omitted)). "As a result, the Constitution 'demands that content-based restrictions on speech be presumed invalid . . . and that the Government bear the burden of showing their constitutionality.'" *Id.* at 2543–44 (quoting *Ashcroft v. ACLU*, 542 U.S. 656, 660 (2004)). "[C]ontent-based restrictions on speech have been permitted," however, "when confined to the few historic and traditional categories [of expression] long familiar to the bar." *Id.* at 2544 (citation omitted).

Content-based restrictions have been found permissible in the following categories of speech: "advocacy intended, and likely, to incite imminent lawless action; obscenity; defamation; speech integral to criminal conduct; so-called 'fighting words'; child pornography; fraud; true threats; and[,] speech presenting some grave and imminent threat the government has the power to prevent." *Id.* (citations omitted). Against this backdrop, the Court finds that the speech purportedly restricted here—Nabaya's false lien (and statements therein) against Stark—could constitute speech integral to criminal conduct. Thus, § 1521 does not unconstitutionally restrict the First Amendment right to free speech based on content.

The Court begins, as it must, by analyzing the plain language of the statute. Section 1521 provides:

> Whoever files, attempts to file, or conspires to file, in any public record or in any private record which is generally available to the public, any false lien or encumbrance against the real or personal property of an individual described in section 1114, on account of the performance of official duties by that individual, knowing or having reason to know that such lien or encumbrance is false or contains any materially false, fictitious, or fraudulent statement or representation, shall be fined under this title or imprisoned for not more than 10 years, or both.

18 U.S.C. § 1521. The plain text of the statute makes clear that it aims to criminalize *conduct* (the *filing* of false liens or encumbrances) intended to harm federal employees. The statute does not criminalize all *false speech* directed at federal employees. The restriction on speech is, at best, incidental. The legislative policy behind the enactment of §1521 confirms this reading:

> "Since 2004, there [was] a nationwide increase in the number of filings by prison inmates of unsubstantiated liens and [UCC] financing statements against state or federal officials involved with their incarceration." *Jones v. Caruso*, 569 F.3d 258, 261 (6th Cir. 2009). Section 1521 was enacted in response to the increasing vulnerability of federal employees as part of the Court Security Improvement Act of 2007. It intends to penalize individuals who seek to intimidate and harass federal employees and officers by filing, attempting to file or conspiring to file false liens or encumbrances. *See* H.R. Rep. 110–218 (2007), 2007 U.S.C.C.A.N. 827.

*United States v. Neal*, 776 F.3d 645, 654 (9th Cir. 2015).

Nabaya, nonetheless, asserts that § 1521 cannot withstand constitutional scrutiny because it punishes the *content* of those liens: only liens containing false statements are prohibited. While the Court acknowledges that "some false statements are inevitable if there is to be an open and vigorous expression of views in public and private conversation," *Alvarez*, 132 S. Ct. at 2544, the First Amendment does not extend so far as to permit conduct intended to harm others just because that conduct includes some element of speech. On that basis, Nabaya's position founders.

"[I]t has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed.'" *Rumsfeld v. Forum for Acad. & Inst. Rights, Inc.*, 547 U.S. 47, 62 (2006) (quoting *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949)). In fact, "words can in some circumstances violate laws directed not against speech but against conduct." *R.A.V. v. St. Paul*, 505 U.S. 377, 389 (1992) (explaining that a "valid basis for according differential treatment to even a content-defined subclass of proscribable speech is that the subclass happens to be associated with particular 'secondary effects' of the speech, so that the regulation is '*justified* without reference to the content of the . . . speech'" (quoting *Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 48 (1986)); *see also Smithfield Foods, Inc. v. United Food & Commercial Workers Int'l Union*, 585 F. Supp. 2d 789, 803 (E.D. Va. 2008) ("[I]t is clear that the 'First Amendment does not provide a defense to a criminal charge simply because the actor uses words to carry out his illegal purpose.'" (quoting *United States v. Barnett*, 667 F.2d 835, 842 (9th Cir. 1982)).

As explained in *Alvarez*, courts have found limitations on false speech permissible in at least three contexts in which the regulation implicated fraud or speech integral to criminal

conduct: "[F]irst, the criminal prohibition of a false statement made to a Government official, 18 U.S.C. § 1001; second, laws punishing perjury; and third, prohibitions on the false representation that one is speaking as a Government official or on behalf of the Government, *see, e.g.*, § 912; § 709." *Alvarez*, 132 S. Ct. at 2545–46. These limits on speech share the general purpose of "'maintain[ing] the general good repute and dignity of . . . government . . . service itself.'" *Id.* at 2546 (alterations in original) (quoting *United States v. Leopwitch*, 318 U.S. 702, 704 (1943)).

Here, § 1521's effect on speech is similarly incidental to its primary purpose: regulating criminal conduct intended to affect government service.[20] Section 1521 does not criminalize the filing of false liens or encumbrances simply because they contain false statements. Instead, the statute regulates conduct (carried out, in part, by written words) intended to harm or intimidate federal employees in the course of their government service. Accordingly, Nabaya does not persuade the Court that § 1521 unconstitutionally restricts speech based on content.

---

[20] Nabaya also suggests that the conduct itself constitutes speech because it expresses ideas. Nabaya creatively argues: "One might as well argue that exhaling in such a manner as to stimulate the vocal chords in certain recognizable patterns with semantic content is 'conduct.' Or that scratching a piece of paper with a stick in such a way as to deposit ink on a page is 'conduct.'" (Reply Mot. Dismiss Indictment 2.) This argument fails.

The Supreme Court "reject[s] the 'view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea.'" *Wisconsin v. Mitchell*, 508 U.S. 476, 484 (1993) (quoting *United States v. O'Brien*, 391 U.S. 367, 376 (1968)). "Thus, a physical assault is not by any stretch of the imagination expressive conduct protected by the First Amendment." *Id.* Stated more broadly, "violence or other types of potentially expressive activities *that produce special harms distinct from their communicative impact* . . . are entitled to no constitutional protection." *Roberts v. United States Jaycees*, 468 U.S. 609, 628 (1984) (emphasis added).

Congress passed § 1521 in order to protect federal employees from harm that exists entirely separate from any expression that Nabaya or others might claim their filings intend to convey. Tellingly, Nabaya does not identify what he intended to convey through the conduct that gave rise to the Superseding Indictment. Were it articulated, however, the Court has little doubt that such expression could be divorced from the regulated conduct (*i.e.*, the filing of false liens or encumbrances) and communicated through other, legal means.

13

### 3.    Section 1521 Is Not Impermissibly Overbroad

Alternatively, Nabaya argues that § 1521 "presents 'a substantial risk that application of the provision will lead to suppression of speech.'" (Reply Mot. Dismiss Indictment 5, ECF No. 27 (citation omitted).) As "[t]he overbreadth claimant," Nabaya "bears the burden of demonstrating, 'from the text of [the law] and from actual fact,' that substantial overbreadth exists." *Hicks*, 539 U.S. at 122 (quoting *New York State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 14 (1988)). As noted above, § 1521 primarily affects conduct. This distinction is critical because "'overbreadth scrutiny has generally been somewhat less rigid in the context of statutes regulating conduct in the shadow of the First Amendment.'" *United States v. Morison*, 844 F.2d 1057, 1075 (4th Cir. 1988) (quoting *Broadrick*, 413 U.S. at 615). "[I]n such a case 'the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.'" *Id.* (quoting *Broadrick*, 413 U.S. at 615).

The United States Court of Appeals for the Fourth Circuit has articulated three circumstances in which the overbreadth doctrine may apply in this context:

(1)    when 'the governmental interest sought to be implemented is too insubstantial, or at least insufficient in relation to the inhibitory effect on [F]irst [A]mendment freedoms';

(2)    when the means employed bear little relation to the asserted governmental interest; and[,]

(3)    when the means chosen by the legislature do in fact relate to a substantial governmental interest, but that interest could be achieved by 'a less drastic means'—that is, a method less invasive of free speech interests.

*Morison*, 844 F.2d at 1075 (quoting Martin H. Redish, *The Warren Court, the Burger Court and the First Amendment Overbreadth Doctrine*, 78 NW. U. L. Rev. 1031, 1035 (1983)); *see also United States v. Kiriakou*, No. 1:12cr127, 2012 WL 3263854, at *7 (E.D. Va. Aug. 8, 2012) (applying *Morison* and rejecting overbreadth claims regarding 50 U.S.C. § 421(a) and 18 U.S.C. § 793(d)).

Nabaya cannot satisfy any of the circumstances set forth in *Morison*. First, "the governmental interest sought to be implemented" is not "too insubstantial" or "insufficient" in relation to the statute's effect on First Amendment freedoms. *Morison*, 844 F.2d at 1075. The statute focuses on the substantial interest of preventing a specific type of harm that government employees could suffer as a result of the filing of false liens or encumbrances. *See Neal*, 776 F.3d at 653. Nabaya suggests that this would produce the chilling effect of punishing erroneous legal claims made in court because claimants would "fear prosecution under § 1521." (Reply Mot. Dismiss Indictment 5.) His argument, however, ignores that the statute requires the defendant to "know[] or ha[ve] reason to know that such lien or encumbrance is false." 15 U.S.C. § 1521. Not all claims made against federal employees would subject claimants to criminal liability; only those claimants who knew or had reason to know that the lien or encumbrance was false would reasonably fear prosecution. Accordingly, the interest of preventing harm to federal employees outweighs the negligible First Amendment restriction imposed by § 1521.

Second, the statute protects this interest by prohibiting *all* persons from using false financial filings intended to harm and intimidate federal employees. *See Neal*, 776 F.3d at 653. Section 1521 does not seek to achieve its aim through arbitrary means; it targets only conduct directly intertwined with the harm the statute seeks to prevent. Third, the Court sees no less drastic means of protecting federal employees from the filing of false liens or encumbrances against them. Nabaya suggests that, in lieu of prosecuting an individual who has violated § 1521, the Court could simply prohibit credit reporting agencies from reporting on the case or permit the United States to submit a pre-filing injunction. These alternative means would do little to ensure that the law prevents the specific type of harm that government employees could

suffer as a result of false filings of liens or encumbrances against them. The Court rejects

Nabaya's argument that § 1521 violates the First Amendment's right to free speech.

## B.     <u>Section 1521 Does Not Violate the Petition Clause</u>

The Court will deny the Motion to Dismiss Indictment to the extent it contends that

§ 1521 violates the Petition Clause of the First Amendment, applied to the United States through

the Due Process Clause of the Fifth Amendment. Nabaya argues that § 1521 punishes him for

filing suits against the government in violation of the Petition Clause. Nabaya overstates the

protections afforded him under the Petition Clause.

The Petition Clause of the First Amendment guarantees "the right of the people . . . to

petition the Government for a redress of grievances." This right, however, "does not provide

blanket immunity for unlawful conduct." *Thorne v. Bailey*, 846 F.2d 241, 244 (4th Cir. 1988).

Addressing the validity of liens against the United States in a case seeking declaratory and

injunctive relief, the United States District Court for the Southern District of Georgia explained:

> Neither federal nor state law provides that a citizen may file a lien on the property of a public official if the citizen believes that the official has not faithfully fulfilled his or her duties to the public. On the contrary, the strength of our democratic system lies in the fact that such grievances are addressed at the ballot box or through other political activity. Additionally, neither federal nor state law provides that a citizen may file a lien on the property of a public official for alleged wrongs committed by that official against the citizen without the existence of a judgment in the citizen's favor. The citizen must first take his grievance to court, and if he or she wins a judgment against the official that is not paid, then and only then may the citizen obtain a judgment lien against the official.

> Defendants' method of lien filing, *i.e.*, filing liens whenever the individual feels grieved or wronged by a public official, unduly interferes with the government's ability to perform its duties. Public officials subject to harassing and malicious filings such as the liens at issue in this case cannot effectively perform their duties. Indeed, they may be coerced by such filings into making decisions that are not in the public interest just to avoid the filing of further liens. Consequently, the American citizens at large suffer when our public officials are not able to perform their duties free of harassment and attempts at extortion.

*United States v. Barker*, 19 F. Supp. 2d 1380, 1384 (S.D. Ga. 1998).

16

Adopting the reasoning of *Barker*, the Court cannot find that the Petition Clause gives individuals, such as Nabaya, carte blanche to sue government employees, especially in the manner proscribed by § 1521. Indeed, "there is no First Amendment right to harass, intimidate, and attempt to extort federal officials," and "there is no such right to use 'liens' with no basis in fact or law to pursue such improper purposes." *Id.* Ultimately, "where defendants have exhausted all the remedies that due process allows, they cannot turn to terror tactics in an effort to force public officials to change their minds." *Id.* at 1384–85. Section 1521 does not violate the First Amendment's Petition Clause.

## C. Counts One and Two Each State an Offense

The Court will deny the Motion to Dismiss Indictment for failure to state an offense. Nabaya submits that both counts fail to state an offense "[b]ecause legal claims cannot qualify as false statements of fact." (Mot. Dismiss Indictment 8, ECF No. 21.) In essence, Nabaya argues that the Superseding Indictment alleges the falsity of a legal claim, which, by its nature, cannot be proven false. Nabaya's hyper-technical argument fails.

### 1. Motion to Dismiss Indictment Legal Standard

"A motion to dismiss the indictment tests whether the indictment sufficiently charges the offense set forth against the defendant." *United States v. Brandon*, 150 F. Supp. 2d 883, 884 (E.D. Va. 2001), *aff'd*, 298 F.3d 307 (4th Cir. 2002). The Federal Rules of Criminal Procedure require that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). The United States satisfies this requirement when the indictment alleges each essential element of the offense along with sufficient additional facts to allow the indictment to be used as proof to bar subsequent prosecutions for the same offense. *United States v. Duncan*, 598 F.2d 839, 848 (4th Cir. 1979). The facts alleged should also be sufficiently detailed to apprise the defendant of the charge

against him so that he may prepare his defense. *Id.* To warrant dismissal of an indictment, the defendant must demonstrate that the allegations in the indictment, even if true, would not state an offense. *United States v. Thomas*, 367 F.3d 194, 197 (4th Cir. 2004).

### 2. The Superseding Indictment Tracks the Elements Required to Establish Guilt Under Both Statutes

Count One of the Indictment alleges that Nabaya

> filed in the public records of Chesterfield County General District Court, a false mechanic's lien against the real and personal property of Wally Stark, an officer and employee of the United States Government, on account of Stark's performance of official duties, knowing and having reason to know that such lien was false and contained materially false, fictitious, and fraudulent statements and representations, including the claim that Stark had unlawfully restrained his pension and owed the defendant $6,564.00, all in violation of Title 18, United States Code, Section 1521.

(Superseding Indictment ¶ 22.) Paragraph 22 plainly outlines the essential facts of Count One in a sufficiently detailed manner that apprises Nabaya of the charge against him so that he may prepare his defense.

Count Two of the Indictment asserts that Nabaya

> knowingly and fraudulently made a material false declaration, certificate and verification under the penalty of perjury, as permitted under Section 1746 of Title 28, in and in relation to a case under Title 11, *In re Wally Stark*, Case No. 16-34060, in the United States District Court for the Eastern District of Virginia, by filing a sworn involuntary bankruptcy petition falsely alleging that Wally Stark owed the defendant $50,000 related to personal injury, when, in truth and fact, as at least eight courts had advised the defendant, he had no such lawful claim against Stark, all in violation of Title 18, United States Code, Section 152(3).

(Superseding Indictment ¶ 24.) Paragraph 24 also plainly details the facts necessary to apprise Nabaya of the charge against him.

Nabaya, nonetheless, contends that both counts fail to state an offense. First, on Count One, Nabaya argues that, by alleging that he made a "claim that Stark . . . unlawfully restrained his pension and owed [him] $6,564.00," the Superseding Indictment omits any allegation of a "false statement of fact," which must be proven to establish guilt under § 1521. Second, on

Count Two, Nabaya contends that, by claiming that he "falsely alleg[ed] that Wally Stark owed [him] $50,000 related to personal injury," the Superseding Indictment fails to apprise Nabaya of a "false declaration," which must be proven to establish guilt under 18 U.S.C. § 152(3). On both counts, Nabaya submits that the United States alleges "legal claims" as "facts." Nabaya's argument does not persuade.

Whether Stark restrained Nabaya's pension unlawfully, and whether Stark owed Nabaya $50,000 for personal injury, while mixed questions of law and fact, can still be proven true or false. In fact, a jury would need to make those largely factual determinations at trial in order to convict Nabaya on either or both counts. To hold otherwise would provide criminal defendants, like Nabaya, an opportunity to challenge every crime charged against them on the grounds that a "fact" upon which the United States relies constitutes a "legal claim." For example, a defendant charged with possession of a firearm as an illegal alien, in violation of 18 U.S.C. § 922(g), could seek to dismiss the indictment on the basis that proving the "fact" of his or her legal status required the resolution of a legal question (*i.e.*, whether he or she was an illegal alien).[21] The Court declines to find the Superseding Indictment defective merely because some "facts" involve questions of law mixed with fact. Accordingly, Counts One and Two each state an offense.

---

[21] In arguing to the contrary, Nabaya relies on *United States v. Endo*, 635 F.2d 321, 323 (4th Cir. 1980), which held that the prosecution could not base a perjury charge on a legal statement. That case involves inapposite facts and procedural circumstances. Specifically, the United States charged the defendant in *Endo* with perjury after she pleaded "guilty" and then sought to withdraw her guilty plea. *Id.* at 322. In holding that the defendant's statements of guilt and then non-guilt could not support a perjury charge, the court reasoned that such statements are "devoid of all factual content." *Id.* at 324.

    The Fourth Circuit explained that holding otherwise would "discourage[] defendants from exercising their rights to testify, without substantially benefiting the administration of justice." *Id.* at 323. Not only are such policy implications absent here, whether Nabaya "claim[ed] that Stark had unlawfully restrained his pension and owed him $6,564.00" contains factual content susceptible to a determination of its truthfulness.

**D.      The United States Does Not Assert "Duplicitous" Crimes in Count One**

The Court will deny the Motion to Dismiss Indictment on the grounds that Count One

alleges duplicitous crimes. The Fourth Circuit defines duplicity[22] as "'the joining in a single

count of two or more distinct and separate offenses.'" *United States v. Kamalu*, 298 F. App'x

251, 254 (4th Cir. 2008) (quoting *United States v. Burns*, 990 F.2d 1426, 1438 (4th Cir. 1993)).

> The overall vice of duplicity is that the jury cannot in a general verdict render its
> finding on each offense, making it difficult to determine whether a conviction
> rests on only one of the offenses or on both. Adverse effects on a defendant may
> include improper notice of the charges against him, prejudice in the shaping of
> evidentiary rulings, in sentencing, in limiting review on appeal, in exposure to
> double jeopardy, and of course the danger that a conviction will result from a less
> than unanimous verdict as to each separate offense.

*Id.* (citation omitted). A single offense that can be committed by alternative means, however, is

not necessarily duplicitous, meaning duplicative. *See* Fed. R. Crim. P. 7(c). Further, "[a]

duplicitous count is not to be dismissed unless it causes prejudice to the defendant." *Kamalu*,

298 F. App'x at 254 (citing *United States v. Sturdivant*, 244 F.3d 71, 75 (2d Cir. 2001)). "Where

the indictment 'fairly interpreted' alleges a 'continuing course of conduct, during a discrete

period of time,' the indictment is not prejudicially duplicitous." *United States v. Davis*, 471 F.3d

783, 790 (7th Cir. 2006).

Nabaya argues that Count One alleges alternative *elements* rather than to alternative

*means.* He rhetorically asks: "Does the lien violate the law because it was itself 'false,' or

because it contained false statements? Did it contain false or fictitious or fraudulent statements?

Was the particular false/fraudulent/fictitious statement that Mr. Stark had restrained the pension

unlawfully, or was it that he owed Mr. Nabaya money, or both?" (Mot. Dismiss Indictment 13

---

[22] This legal definition, by using an archaic definition of this word, does not incorporate
the modern meaning of duplicitous, which connotes deceit or dishonesty. It refers to what now
would likely be termed "duplicative" charges.

(citation omitted).) According to Nabaya, the United States has armed itself with twelve different theories on which to pursue conviction. (*Id.* at 14.) The Court disagrees.

In spite of Nabya's concentrated parsing of the United States' allegations, a fair reading of the Superseding Indictment plainly alleges a single theory of Nabaya's criminal liability under Count One, of which the Superseding Indictment adequately apprises Nabaya. "Because '[t]he line between multiple offenses and multiple means to the commission of a single continuing offense is often a difficult one to draw,' the 'decision is left, at least initially, to the discretion of the prosecution.'" *United States v. Moazzeni*, 908 F. Supp. 2d 748, 751 (E.D. Va. 2012) (quoting *Davis*, 471 F.3d at 790). Count One does not join prejudicially duplicitous offenses that warrant dismissal. The Court will deny Nabaya's Motion to Dismiss Indictment.

## IV. Analysis: Motion for Designation of Discovery and Disclosure of Transcripts

The Court will deny Nabaya's Motion for Designation of Discovery and Disclosure of Transcripts. In the Motion for Designation of Discovery and Disclosure of Transcripts, Nabaya submits two requests: (1) that the Court compel the United States to designate portions of discovery as evidence in accordance with Federal Rule of Criminal Procedure 12(b)(4); and, (2) that the Court authorize disclosure of transcripts of instructions given to the Grand Jury. For the reasons stated below, the Court will deny both requests.

### A.     Rule 12(b)(4) Does Not Require the United States to "Preview" its Case-in-Chief

Nabaya's request that the United States "give notice of [its] intent to use (in its evidence-in-chief at trial) any evidence that [he] may be entitled to discover under Rule 16" extends beyond the text of Rule 12(b)(4)(B). That Rule provides:

> At the arraignment or as soon afterward as practicable, the defendant may, in order to have an opportunity to move to suppress evidence under Rule 12(b)(3)(C), request notice of the government's intent to use (in its

> evidence-in-chief at trial) any evidence that the defendant may be entitled to
> discover under Rule 16.

Fed. R. Crim. P. 12(b)(4). The Advisory Committee's note to Rule 12(b)(4) indicate that the

fundamental purpose of the Rule is to ensure that a defendant "can make his motion to suppress

prior to trial " by "request[ing] the government to give notice of its intention to use specified

evidence which the defendant is entitled to discover under [R]ule 16." Fed. R. Crim. P. 12(b)(4)

advisory committee's note to 1974 amendment (emphasis added). In view of the Rule's plain

language, as well as the purpose as set forth by the Advisory Committee, the Honorable T.S.

Ellis III, United States District Judge, has identified two limits that circumscribe the relief

available to defendants invoking Rule 12(b)(4):

> The first limitation operates as a restriction on the purpose for which a Rule
> 12(b)(4)(B) request may be made. The Rule entitles defendants to notice of
> evidence that the government intends to use only insofar as that notice would
> "provide the defendant with sufficient information to file the necessary
> suppression motions." . . . . . Thus, the government's obligation under Rule
> 12(b)(4)(B) ends when it has made disclosures that sufficiently allow the
> defendants to make informed decisions whether to file one or more motions to
> suppress. In this respect, the Rule "was not designed to aid the defendant in
> ascertaining the government's trial strategy, but only in effectively bringing
> suppression motions before trial, as required by Rule 12(b)(3)." Put differently,
> defendants cannot invoke Rule 12(b)(4)(B) "to force the government to decide
> precisely which documents provided in discovery it will offer at trial and to
> prevent it from using any that it does not so designate as a matter of trial tactics."
>
> . . . .
>
> What Rule 12(b)(4)(B) does require is that the government respond to a
> defendant's request for notice whether the government intends to offer specific
> evidence that the request identifies. This is the second limitation: In order to
> trigger a notice obligation, the defendant's request must identify potentially
> suppressive evidence with specificity. . . . To avoid needless expense and trial
> disruption, Rule 12(b)(4)(B) allows a defendant to require that the government
> disclose whether the government intends to offer the "specified evidence" during
> its case-in-chief. The Rule thereby "streamlines the suppression process because
> the defendant can avoid moving to suppress evidence the Government does not
> intend to use."

*United States v. Ishak*, 277 F.R.D. 156, 160 (E.D. Va. 2011) (citations omitted). The Court finds Judge Ellis's reasoning persuasive.

If Nabaya seeks to obtain notice from the United States of evidence the United States intends to offer in its case-in-chief, Nabaya's request must identify, with specificity, the evidence he may wish to suppress. *Id.*; *see* Fed. R. Civ. P. 12(b)(4). He cannot make an across-the-board request that the United States disclose all evidence it intends to use at trial. Absent a more tailored request, the Court must deny Nabaya's request under Rule 12(b)(4).

### B. Nabaya Has Not Demonstrated a Particularized Need for the Disclosure of Grand Jury Transcripts

Nabaya invokes Federal Rule of Criminal Procedure 6(e)(3)(E)(ii)[23] to request that the Court authorize the disclosure of grand jury transcripts. Specifically, Nabaya seeks to determine whether the United States properly instructed the grand jury on the "false statement" and "false declaration" elements of Counts One and Two. Because Nabaya does not make a strong showing of "particularized need" for his request, the Court will deny it.

A party seeking disclosure of grand jury materials under Rule 6(e) must make a "strong showing of particularized need" for those materials. *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 443 (1983) ("We have consistently construed [Rule 6(e)] . . . to require a strong showing of particularized need for grand jury materials before any disclosure will be permitted."); *see also United States v. Nguyen*, 314 F. Supp. 2d 612, 616 (E.D. Va. 2004) ("Because grand jury proceedings are entitled to a strong presumption of regularity, a defendant seeking disclosure of grand jury information under Rule 6(e)(3)(E)(ii) bears the *heavy burden* of establishing that 'particularized and factually based grounds exist to support the proposition that irregularities in

---

[23] Rule 6(e)(3)(E)(ii) permits the court to "authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand jury matter . . . at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury."

the grand jury proceedings may create a basis for dismissal of the indictment.'" (citation omitted) (emphasis added)).

Recognizing that the presumption of secrecy and regularity given to grand jury proceedings applies to requests similar to Nabaya's, courts have repeatedly rejected requests for the instructions provided to a grand jury. *See, e.g., United States v. Morad*, No. 13–101, 2014 WL 68704, at *2 (E.D. La. Jan. 8, 2014) ("[The Defendant's] bald assertion that the United States failed to properly instruct the grand jury on this subject is insufficient to overcome the presumption of regularity that attaches to grand jury proceedings."); *United States v. Chalker*, No. 12–0367, 2013 WL 4547754, at *6 & n.7 (E.D. Pa. Aug. 27, 2013) ("Since the Government's Indictment is not based on an improper theory of wire fraud, and is facially valid, Defendant has failed to demonstrate a particularized need for the requested disclosures."); *United States v. Singhal*, 876 F. Supp. 2d 82, 99 (D.D.C. 2012) ("Where, as here, the Indictment is facially valid and defendants' claims do not justify dismissal of the Indictment, defendants have not established any particularized need for the grand jury instructions to be disclosed.").

Despite this authority, Nabaya cites no law beyond Rule 6 itself in his Motion for Designation of Discovery and Disclosure of Transcripts and otherwise provides no basis for his request. In his Reply, Nabaya contends that he demonstrates a particularized need for the transcripts in view of the Superseding Indictment's "obvious and glaring defects." (Reply Mot. Designation of Disc. and Disclosure of Ts. 4, ECF No. 28.) Of course, the Court has already rejected Nabaya's technical argument regarding the so-called "distinction between legal claims and statements of facts." (*Id.* at 2.) Accordingly, the Court sees no basis for disclosing grand jury transcripts on an already-resolved facial challenge to the sufficiency of the Superseding Indictment. *See United States v. McDonnell*, 3:14cr12, ECF No. 175 (E.D. Va. May 20, 2014)

("Review of facially valid indictments either for insufficient evidentiary support or for the sufficiency of the prosecutor's presentation would run counter to the whole history of the grand jury institution." (citations omitted)); *see also Chalker*, 2013 WL 4547754, at *6; *Singhal*, 876 F. Supp. 2d at 99. The Court will deny the Motion for Designation of Discovery and Disclosure of Transcripts.

## V. Conclusion

For the foregoing reasons, the Court will deny the Motion to Dismiss Indictment and the Motion for Designation of Discovery and Disclosure of Transcripts.

An appropriate Order shall issue.

/s/

M. Hannah Lauck
United States District Judge

Richmond, Virginia
Date: 4/19/17

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

**UNITED STATES OF AMERICA**

**v.**                                                    **Criminal No. 3:17cr3**

**SHAPAT AHDAWAN NABAYA,**
*also known as Norman Abbott,*

### Defendant.

### <u>RULES GOVERNING DECORUM IN THE COURTROOM</u>

When appearing in the United States District Court for the Eastern District of Virginia,

unless excused by the presiding judge, all counsel or any person in the courtroom shall abide by

the following:

1) In presentations before the Court, parties proceeding *pro se* shall observe the same rules of decorum which apply to attorneys.

2) Follow the Federal Rules of Evidence, the Federal Rules of Criminal Procedure, the Local Rules for the United States District Court for the Eastern District of Virginia, and all rules of courtroom decorum.

3) Specifically, as to Nabaya, the right to proceed *pro se* is contingent upon his following the Federal Rules of Evidence, the Federal Rules of Criminal Procedure, the Local Rules for the Eastern District of Virginia, and all rules of courtroom decorum.

4) Stand as Court is opened, recessed, or adjourned.

5) Stand when addressing, or being addressed by, the Court.

6) Stand at the lectern while speaking to the Court or when examining any witness.

7) No person may testify from the lectern. If Nabaya wishes to offer his version of events, he must do so, under oath, from the witness stand. Of course, Nabaya is not required to offer any evidence, to testify, or even to question the government's witnesses in this criminal matter.

8) Only the courtroom security officer shall be allowed to present exhibits to the witnesses or the Court.

9) Stand at the lectern while making opening statements or closing arguments.

10) Avoid disparaging personal remarks or acrimony toward opposing counsel, the Court, litigants, witnesses, or any person in the courtroom.

11) Refer to all persons, including witnesses, other counsel, and the parties by their surnames and not by their first or given names.

12) In examining a witness, counsel or any party proceeding *pro se* shall not repeat or echo the answer given by the witness.

13) Only one attorney for each party, or any party acting *pro se*, shall examine or cross-examine each witness. The person stating objections (if any) during direct examination shall be the attorney or party acting *pro se* recognized for cross-examination.

14) Request permission before moving anywhere in the courtroom.

15) Any paper or exhibit not previously marked for identification should first be submitted to the Clerk for marking before it is presented to a witness. Any exhibit offered into evidence should, at the time of such offer, be handed to opposing counsel.

16) In making objections, counsel or any party proceeding *pro se* should briefly state only the legal grounds therefore without further elaboration unless explanation is requested by the Court.

17) Once an objection has been ruled upon, no party may continue to re-argue that objection.

18) In opening statements and in arguments to the jury, counsel, or any party proceeding *pro se*, shall not express personal knowledge or opinion concerning any matter in issue.

19) Counsel, or any party proceeding *pro se*, may not state a factual assertion unsupported by sworn evidence in front of the jury via questioning, objection, or any argument.

20) Counsel, or any party proceeding *pro se*, shall instruct all persons at counsel table that gestures, facial expressions, audible comments, or the like, as manifestations of approval or disapproval during the testimony of witnesses or at any other time, are absolutely prohibited.

21) All counsel, and any party proceeding *pro se*, shall dress in an appropriate manner consistent with the requirements of decorum and dignity appropriate to the courtroom.

22) If Nabaya refuses to abide by all of these rules, he can be found in contempt, he can lose his right to proceed *pro se*, or, under certain circumstances, the trial can continue without his presence in the courtroom.

The standards set forth above are minimal, not all-inclusive, and are intended to supplement, not supplant or limit, the ethical obligations of counsel under the Rules of Professional Conduct, and the obligations of any party seeking to appear *pro se*. The Court may at any time announce and enforce additional requirements or prohibitions, or may excuse compliance with any one or more of these standards.