## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

**UNITED STATES OF AMERICA**

**v.**                                                    **Criminal No. 3:17cr3**

**SHAPAT AHDAWAN NABAYA,**
*also known as Norman Abbott,*

**Defendant.**

### MEMORANDUM OPINION

This matter comes before the Court following an omnibus hearing addressing, among other issues: (1) Shapat Ahdawan Nabaya's competency; and, (2) Nabaya's forty-four filings that purport to seek dismissal of the criminal charges pending against him. For the reasons stated below and on the record at the conclusion of the August 18, 2017 omnibus hearing, the Court will deny Nabaya's forty-four pretrial filings. (ECF Nos. 59, 61, 62, 64, 65, 66, 69, 70, 71, 73, 76, 91, 94, 97, 98, 99, 100, 101, 102, 103, 104, 108, 109, 111, 112, 114, 115, 116, 117, 121, 127, 129, 131, 134, 135, 138, 139, 140, 144, 145, 146, 147, 151, 153.)

### I. Factual Background

On April 4, 2017, a Grand Jury sitting in the Eastern District of Virginia returned a two-count indictment (the "Superseding Indictment") against Nabaya. (ECF No. 43.)[1] The Superseding Indictment recounts the history of the various civil lawsuits that serve as the backdrop for the charges now before the Court. (Superseding Indictment ¶¶ 1–20.) Those lawsuits, initiated by Nabaya, followed an Internal Revenue Service ("IRS") levy of Nabaya's retirement pension. (*Id.*)

---

[1] On May 15, 2017, the Court granted the Motion of the United States to Amend the Superseding Indictment. (ECF No. 74.) The amendment changed a typographical error in Paragraph 17, which denoted the year as "105" instead of "2015."

Count One of the Superseding Indictment alleges that Nabaya retaliated against a federal officer by false claim, in violation of 18 U.S.C. § 1521.[2] The United States asserts that Nabaya filed a false and retaliatory mechanic's lien alleging that Wally Stark, an IRS official, unlawfully restrained Nabaya's pension and owed Nabaya $6,564. Count Two of the Superseding Indictment alleges that Nabaya made a false statement in bankruptcy, in violation of 18 U.S.C. § 152(3).[3] The United States contends that Nabaya falsely stated in a bankruptcy filing that Stark owed him $50,000 related to a personal injury.

Nabaya was arrested on February 2, 2017. On February 6, 2017, the parties appeared before the Honorable David J. Novak, United States Magistrate Judge, for Nabaya's detention hearing.[4]

---

[2] Section 1521 states:

> Whoever files, attempts to file, or conspires to file, in any public record or in any private record which is generally available to the public, any false lien or encumbrance against the real or personal property of an individual described in section 1114, on account of the performance of official duties by that individual, knowing or having reason to know that such lien or encumbrance is false or contains any materially false, fictitious, or fraudulent statement or representation, shall be fined under this title or imprisoned for not more than 10 years, or both.

18 U.S.C. § 1521.

[3] Section 152(3) provides, in part:

> A person who . . . knowingly and fraudulently makes a false declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, in or in relation to any case under title 11 . . . shall be fined under this title, imprisoned not more than 5 years, or both.

18 U.S.C. § 152(3).

[4] Magistrate Judge Novak has addressed myriad pretrial issues, including those regarding Nabaya's pretrial release. On March 27, 2017, Magistrate Judge Novak addressed the United States' concern that Nabaya had a conflict with his then-attorneys arising out of a lawsuit filed by Nabaya against them in the United States District Court for the District of Columbia. (March 27, 2017 Mem. Order, ECF No. 39.) Judge Novak found that no conflict of interest existed. (*Id.*

## II.  The April 11, 2017 Hearing on Nabaya's First Set of Pretrial Motions

On April 11, 2017, Nabaya, his then-counsel (the Federal Public Defender (the "FPD")),

and the attorneys for the United States appeared in open court for Nabaya's arraignment on the

Superseding Indictment and a hearing on two motions:  Nabaya's Motion to Dismiss Indictment,

(ECF No. 21); and, his Motion for Designation of Discovery, Disclosure of Transcripts, and

Request for Pretrial Conference, (ECF No. 19).[5]  Before argument commenced, the Court

addressed various administrative and procedural matters.

First, with severe restrictions and on a one-time basis, the Court permitted Nabaya's court

reporter, Juan Ortega (who appeared without knowledge of Nabaya's violative conduct), to sit in

---

at 9.)  Judge Novak also determined that, because it was filed in Washington, D.C., and not in the
Eastern District of Virginia where Nabaya was subject to a pre-filing injunction, Nabaya's
lawsuit did not violate the conditions of his release.  (*Id.* at 4–5.)  After briefing by both parties,
however, and at the request of the United States, Judge Novak modified Nabaya's conditions of
release.  (April 7, 2017 Mem. Order, ECF No. 51.)  Judge Novak ordered that Nabaya "may not
file any lawsuit in any federal court against any federal official that concerns this criminal
prosecution without first obtaining leave."  (*Id.* at 1.)
    On June 26, 2017, Magistrate Judge Novak revoked Nabaya's pretrial release, finding
that:  (1) he left his residence without preapproval; and, (2) he turned in his location monitoring
equipment and indicated an unwillingness to comply with that requirement of his release.  (June
26, 2017 O. 1–2, ECF No. 125.)  On July 27, 2017, Magistrate Judge Novak held a hearing to
reconsider the revocation of Nabaya's pretrial release and, in a subsequent order, released
Nabaya on his previous terms and conditions.  (July 27, 2017 O. 1, ECF No. 143.)  On August
11, 2017, after Nabaya continued to submit filings contravening this Court's instructions,
Magistrate Judge Novak granted the United States' Motion for Order to Show Cause as to why
Nabaya "should not be held in contempt of court for not complying fully with all terms and
conditions of his release."  (Aug. 11, 2017 O. 1, ECF No. 149.)  Magistrate Judge Novak heard
that matter on August 25, 2017, and Nabaya's bond was revoked that same day.

    [5] The Court initially scheduled Nabaya's jury trial for April 11, 2017.  On March 30,
2017, the Court suspended the jury trial pending resolution of Nabaya's pretrial motions.  (March
30, 2017 Order, ECF No. 40.)  In that Order, the Court held that its decision did not implicate
Nabaya's right to a speedy trial because the delay in trial date flowed from the pendency of
motions filed by Nabaya.  (*Id.* at 2; *see also* Apr. 21, 2017 O. 2 n.1, ECF No. 58.)  Despite this
written order, Nabaya argued in open court that his speedy trial rights had been violated.  The
Court overruled that objection.  The Court continued the jury trial again when the United States
filed the Motion to Determine Competency.  (May 16, 2017 O. 3, ECF No. 88.)

on and transcribe an unofficial version of the hearing.[6]  Second, the Court addressed Nabaya's

request to proceed *pro se*.  Nabaya cited concerns about his attorneys' refusal to advance

arguments regarding his status as a sovereign citizen, as well as other claims regarding the

Court's jurisdiction and constitutional precepts.  This breakdown in communication between

Nabaya and the FPD required the Court to find that the FPD could not provide adequate

representation, even in standby status.  The Court thoroughly explained to Nabaya the risks

associated with proceeding *pro se*, and Nabaya elected to waive his right to counsel.[7]

---

[6] Nabaya brought the court reporter without notice, even to his own attorneys.  The Court admonished Ortega that he could not record the hearing because the Local Criminal Rules of the United States District Court for the Eastern District of Virginia prohibit the recording of judicial proceedings.  *See* Local Crim. R. 53(A) ("The . . . operation of tape recorders in the courtroom or its environs, . . . during the progress of or in connection with judicial proceedings . . . is prohibited.").  Nabaya objected to the Court's prohibition on the use of an electronic recording device in the courtroom on First Amendment grounds.  Relying on a federal decision that rejected a similar challenge to a court's "Electronics Ban Order," the Court overruled that general objection.  *See McKay v. Federspiel*, No. 14cv10252, 2014 WL 1400091, at *5 (E.D. Mich. Apr. 10, 2014) ("[A]lthough the public has a First Amendment right to attend and observe courtrooms, the Supreme Court has explicitly disavowed that the media—and by extension, the public—has a First Amendment right to use electronic equipment in the courtroom.").

The Court also informed Nabaya and Ortega that any transcript that Ortega produced would not constitute an official transcript of the proceeding.  *See* 28 U.S.C. § 753 ("The transcript in any case certified by the reporter or other individual designated to produce the record shall be deemed prima facie a correct statement of the testimony taken and proceedings had.  No transcripts of the proceedings of the court shall be considered as official except those made from the records certified by the reporter or other individual designated to produce the record.").  The Court warned Nabaya that, should he represent to any court or court official that his personal transcript was "official," he would be subject to a contempt citation.  The Court advised Nabaya and Ortega that if Ortega wished to appear in the capacity of a court reporter again, Nabaya must request permission by filing.  The Court also explained that Ortega would need to acquire specific permission from the Court in order to bring any electronic device into any judicial proceedings.

[7] As this Memorandum Opinion will show in detail, Nabaya has struggled to an extreme degree in a *pro se* capacity.  Although Nabaya claims to understand the nature of the charges against him, his approach to this case has not reflected sound comprehension of how to proceed in court or of any consequences for failing to do so.  The Court continues to advise Nabaya that it remains his best option to defend against the criminal charges he faces *with the assistance of counsel.*

Third, the Court overruled Nabaya's request that the undersigned recuse herself.[8]  Fourth, after oral argument on Nabaya's pretrial motions, the Court articulated to Nabaya numerous instructions and rules governing decorum in the courtroom.  The Court warned Nabaya that failure to comply with these instructions and rules could result in waiver of his right to proceed *pro se* or waiver of his right to remain in the courtroom during his trial.  *See Indiana v. Edwards,* 554 U.S. 164, 171 (2008); *see also Faretta v. California,* 422 U.S. 806, 834 n.46 (1975); *United States v. Frazier-El,* 204 F.3d 553, 560 (4th Cir. 2000).

Fifth, the Court admonished Nabaya that his frivolous arguments did not constitute an efficient use of his or the Court's resources.  Nonetheless, the Court permitted Nabaya to speak on his own behalf both when he had counsel and after he terminated the attorney-client relationship.  To the extent Nabaya's arguments or "motions" were discernible, the Court ruled on each issue Nabaya raised during this lengthy hearing.[9]  The Court highlighted its patience

---

[8] At some point before the April 11 hearing, Nabaya sued the undersigned and Magistrate Judge Novak.  In overruling Nabaya's argument for recusal, (Apr. 11 Hearing, ECF No. 52), the Court echoed Magistrate Judge Novak's April 7 Memorandum Order that directly addressed that issue:  "The D.C. Lawsuit does not constitute grounds for the undersigned's recusal, as Defendant 'cannot be allowed to create the basis for recusal by [his] own deliberate actions.'" (April 7, 2017 Mem. Order 3 n.1 (quoting *United States v. Owens,* 902 F.2d 1154, 1156 (4th Cir. 1990).)  "Otherwise, defendants could easily engage in inappropriate judge shopping."  (*Id.* (citing *Owens,* 902 F.2d at 1156; *Jones v. Pittsburgh Nat. Corp.,* 899 F.2d 1350, 1355–56 (3d Cir. 1990) (finding recusal not required after litigant filed a judicial complaint against presiding judge); *United States v. Studley,* 783 F.2d 934, 940 (9th Cir. 1986) ("A judge is not disqualified by a litigant's suit or threatened suit against him."); *United States v. Grismore,* 564 F.2d 929, 933 (10th Cir. 1977) ("A judge is not disqualified merely because a litigant sues or threatens to sue him.")).)

[9] In this Court's April 19 Memorandum Opinion articulating its findings from the April 11 hearing on Nabaya's *written* motions, the Court provided the following summary of its rulings on Nabaya's *in-court* arguments, which he advanced in a *pro se* capacity:

> [T]he Court overruled objections, rejected arguments, or denied motions that appeared to flow from Nabaya's unfounded, sovereign citizen-based theories. The core of those theories rests on Nabaya's claim that he could choose to opt out of this Court's jurisdiction by refusing, or having refused, to enter into a contract

with Nabaya's imprudent pretrial strategy, but admonished him that frivolous motions and

arguments would not be tolerated further. The Court informed Nabaya that, like all other

litigants in this Court, he must submit any motion pursuant to a rule, with a proper caption, and

> that gives this Court jurisdiction. The Court has soundly rejected Nabaya's nonsensical attempt to establish that he is not the person named in the Superseding Indictment or that he, his "corporation," or whatever entity he claims stands in the courtroom falls outside this Court's purview. The Court has told Nabaya that, should he wish to challenge this Court's rulings on those issues, he should do so, on appeal, at the conclusion of this case.
>
> Thus, Nabaya's endeavor, in the first instance, to dismiss his case pursuant to Article I, § 10 of the United States Constitution, seemingly because that constitutional provision limits the powers of the states through the Contracts Clause, the Import-Export Clause, and the Compact Clause, utterly founders. Any contention by Nabaya that he can cast off this Court's jurisdiction because he has not "contracted" to it misreads the law entirely: that constitutional provision in no way speaks to this Court's jurisdiction to hear the criminal charges brought against Nabaya.
>
> Second, Nabaya's claim that the Court lacks jurisdiction under the Uniform Commercial Code ("UCC") equally fails. The UCC is a uniform set of laws regarding sales and other commercial transactions that harmonizes those laws, through adoption, across state lines. Nothing supports Nabaya's argument that the UCC provides a basis, under contract principles or otherwise, for him to reject this Court's jurisdiction in his criminal case.
>
> Finally, Nabaya's reference to 28 U.S.C. § 3002(15), which, under that statutory scheme, defines the United States, in part, as "a Federal corporation," does not divest this Court of jurisdiction. Section 3001 *et seq.* governs procedures for federal debt collection, not this criminal case. Nothing in that provision supports any claim, contract-based or otherwise, that Nabaya sits beyond the jurisdiction of this Court.
>
> The Court has repeatedly advised Nabaya that these sovereign citizen arguments have no basis in fact or law. Moreover, the Court has warned—and does so again—that continued pursuit of frivolous or already-denied theories could be so disruptive as to risk a finding of contempt or the loss of his right to proceed *pro se. See Indiana v. Edwards,* 554 U.S. 164, 171 (2008) (noting that the right of self-representation "is not absolute"); *see also Faretta v. California,* 422 U.S. 806, 834 n.46 (1975) (concluding that "[t]he right of self-representation is not a license to abuse the dignity of the courtroom" or "a license not to comply with relevant rules of procedural and substantive law" and that "serious and obstructionist conduct" can result in the termination of pro se status); *United States v. Frazier-El,* 204 F.3d 553, 560 (4th Cir. 2000) (noting that "[t]he right [to self-representation] does not exist . . . to be used as a tactic for delay, for disruption, for distortion of the system, or for manipulation of the trial process").

(Apr. 19, 2017 Mem. Op. 6 n.13, ECF No. 55.)

with reference to applicable law. *See* Local Crim. R. 47(F)(1) ("All motions . . . shall be accompanied by a written brief setting forth a concise statement of the facts and supporting reasons, along with a citation of the authorities upon which the movant relies."). Sixth, the Court arraigned Nabaya on the Superseding Indictment. Because Nabaya refused to acknowledge this Court's jurisdiction over him, he did not respond to the Court's inquiry as to his guilt on both Counts One and Two. The Court entered a not guilty plea on his behalf and overruled his objection to the Court doing so.

On April 19, 2017, the Court issued a Memorandum Opinion and Order denying Nabaya's Motion to Dismiss Indictment and Nabaya's Motion for Designation of Discovery, Disclosure of Transcripts, and Request for Pretrial Conference. (ECF Nos. 55, 56.) The Court attached to its Memorandum Opinion a list of "Rules Governing Decorum in the Courtroom" so that Nabaya could have a written reference to the parameters of appropriate in-court conduct.[10]

### III.    The April 19, 2017 Status Hearing With Newly-Appointed Standby Counsel

On April 19, 2017, after the Court issued its opinion regarding the April 11 hearing, the Court held a status hearing, during which it informed Nabaya that William Dinkin, Esquire, had been appointed as his standby counsel. Nabaya resisted that appointment and repeated his desire to represent himself without *any* assistance. In doing so, Nabaya continually interrupted the Court, disruptively speaking over the undersigned judge and doing so away from the lectern.[11]

---

[10] In order to remind Nabaya of the behavior he must exhibit at trial, the Court attaches those same rules to this Memorandum Opinion as Appendix A.

[11] At the beginning of the hearing, Nabaya indicated that he would not enter the well of the Court or sit at counsel table. Nabaya characterized that area of the courtroom as the "ship." Relying on that premise, Nabaya invoked admiralty law and argued that the Court did not have jurisdiction over him, stating that he did not want to somehow concede jurisdiction by entering the ship. The Court overruled Nabaya's objection and ordered that he sit at counsel table with standby counsel.

During the April 19 status hearing, Nabaya offered countless nonsensical arguments. He did so even though the Court had previously advised him, by written order and orally, to avoid making frivolous legal arguments.[12] The Court reiterated to Nabaya that his right to represent himself was not absolute and that his obstructionist behavior could risk the loss of that right, as well as a finding that he was in contempt of court. Thus, although the Court had arraigned Nabaya on the Superseding Indictment on April 11, the Court conducted a second arraignment on April 19, in the presence of standby counsel. The Court found a second arraignment appropriate given Nabaya's earlier uncooperative conduct and because a trial date needed to be set with the input of Nabaya's standby counsel.

The Court asked Nabaya whether he understood the charges against him, and Nabaya did not respond. Instead, he proffered various defenses and advanced additional questionable legal arguments. Nabaya claimed he did not understand the question about whether he wanted to waive a formal reading of the indictment. The Court, in turn, read the Superseding Indictment in its entirety for Nabaya. Nabaya declined standby counsel's offer to view the Superseding Indictment as the Court read it. Nabaya then refused to enter a plea of guilty or not guilty, so the Court entered a plea of not guilty on his behalf. Nabaya objected to the Court doing so and again stated various defenses or other rambling, nonsensical legal arguments.[13] The Court informed

---

[12] For example, Nabaya explained that the Court did not have jurisdiction over him because, after his mother gave birth to him, he became a "corporate fiction." Nabaya offered to submit his birth certificate as proof of this contention. The Court explained that it would not hear such arguments unless presented to the Court via a properly filed motion.

[13] Because Nabaya repeatedly interjected defenses, arguments, and motions, the April 19 status hearing—which, with a decorous litigant, could have been completed in twenty minutes— lasted over two hours.

Nabaya that he could file a second motion to dismiss,[14] "if he wishes to file *one*," before May 3, 2017. (Apr. 21, 2017 O. 2–3 (emphasis added), ECF No. 58.)[15] The Court scheduled a jury trial for June 7, 2017.

### IV. Motion to Determine Competency and the Finding of Competence

Nearly a month after the April 19 status hearing, on May 16, 2017, the Court granted the "Motion of the United States for a Determination of Competency and Memorandum in Support." (ECF No. 63.) The Court informed the parties that it would schedule a hearing to determine the competency of Nabaya after Dr. Evan Nelson, Ph.D, completed and filed a psychiatric report. As a result, the Court continued, generally, the jury trial scheduled for June 7, 2017. The Court further stayed the motions hearing scheduled for May 31, 2017, informing the parties that it would reconsider any motions after it determines whether Nabaya is competent to understand the nature and consequences of the proceeding against him. (ECF No. 89.)

Dr. Nelson filed the psychiatric report and an addendum psychiatric report on June 28, 2017, and July 6, 2017, respectively. (ECF Nos. 126, 128.) With the reports on file, the Court issued a scheduling order on July 19, 2017, (ECF No. 137), setting the oral hearing on the Motion to Determine Competency for August 18, 2017. At the outset of the August 18, 2017

---

[14] The FPD had filed, on Nabaya's behalf, the Motion to Dismiss on which the Court had already ruled.

[15] In the April 21, 2017 Order that followed the April 19 status hearing, this Court reminded Nabaya that it "will not allow [him] to disrupt, delay, or distort the litigative process in this manner in the future." (Apr. 21, 2017 O. 3.) The Court appended to it the same "Rules Governing Decorum in the Courtroom" attached to this Memorandum Opinion and the April 19 Memorandum Opinion.

hearing, the parties agreed that Nabaya had competency to stand trial, and the Court ruled the same.[16]

## V. The August 18, 2017 Omnibus
## Hearing on Nabaya's Forty-Four Motions

To allow ample time to consider matters while balancing the need for the efficient administration of justice, the Court ordered that the August 18, 2017 hearing become an omnibus hearing addressing all outstanding pretrial motions and filings in addition to the competency issue above. Between the April 19 status hearing and the August 18 omnibus hearing, in spite of this Court's clear instruction to file *one* motion to dismiss, Nabaya submitted forty-four filings,[17] including *thirty-seven "motions" after the May 3 deadline.*[18] The competency issue stood apart from these. Even given this prolix record, the United States responded to nineteen of Nabaya's

---

[16] The Court articulates its findings regarding Nabaya's competency more fully in a separate order. (ECF No. 160.)

[17] (*See* ECF Nos. 59, 61, 62, 64, 65, 66, 69, 70, 71, 73, 76, 91, 94, 97, 98, 99, 100, 101, 102, 103, 104, 108, 109, 111, 112, 114, 115, 116, 117, 121, 127, 129, 131, 134, 135, 138, 139, 140, 144, 145, 146, 147, 151, 153.)

[18] (*See* ECF Nos. 70, 71, 73, 76, 91, 94, 97, 98, 99, 100, 101, 102, 103, 104, 108, 109, 111, 112, 114, 115, 116, 117, 121, 127, 129, 131, 134, 135, 138, 139, 140, 144, 145, 146, 147, 151, 153.)

forty-four filings via separate responses,[19] and responded to twenty-four filings via a Court-permitted omnibus filing.[20]

Nabaya submitted six of those procedurally defective filings in the ten days before the hearing. These "motions" set forth what Nabaya claimed were violations of the United States' obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and requested an expedited hearing on the matter.[21] Despite the barrage of scattershot motions, the United States failed to file a written response to just one filing. (ECF No. 153.) Nabaya had filed that motion on the morning of August 18, 2017, about ninety minutes before the hearing began. Nabaya did not file a reply to any of the United States' responses, and the time to do so has expired.

---

[19] (*See* ECF Nos. 77 (responding to ECF No. 59), 78 (responding to ECF No. 61), 79 (responding to ECF No. 62), 80 (responding to ECF No. 64), 81 (responding to ECF No. 66), 82 (responding to ECF Nos. 65 and 69), 83 (responding to ECF No. 70), 84 (responding to ECF No. 71), 85 (responding to ECF No. 73), 87 (responding to ECF No. 76), 96 (responding to ECF Nos. 91 and 94), 110 (responding to ECF No. 108), and 152 (responding to ECF Nos. 144, 145, 146, 147, 151).)

[20] (ECF No. 141 (responding to ECF Nos. 97, 98, 99, 100, 101, 102, 103, 104, 108, 109, 111, 112, 114, 115, 116, 117, 121, 127, 129, 131, 135, 138, 139, 140.) The Court permitted this omnibus response in ECF No. 113.

[21] On August 8, 2017, Nabaya filed two identical documents titled "Deposition, Compulsory Demand for Brady Disclosure and a Suppression Hearing." (ECF Nos. 144, 145.) Two days later, Nabaya filed a document titled "Deposition Under Brady v [sic] Maryland for Incarceration and House Arrest Authority" and a document titled "Ethical Rule 3.8 Order for the Disclosure of Evidence." (ECF Nos. 146, 147.) On August 15, 2017, Nabaya filed a "Compulsory Motion to Expedite Consideration of Nabaya's Motion for Summary Judgment" and, on the day of the hearing, he filed a "Compulsory Motion to Expedite Relief Pursuant to Criminal Rule 32(K)(1) and Rule 60(b)(3). (ECF Nos. 151, 153.) The Court will refer to these as the "*Brady* Motions."

The Court postponed the start of the August 18 omnibus hearing so that Nabaya could consult his standby counsel beforehand.[22]  When the hearing began, Nabaya expressed a willingness "to be brief," saying that he wanted to address only ECF Nos. 144, 145, 146, 147, 151, and 153—the last-minute *Brady* Motions.  Nabaya stated that he would rely upon the submitted pleadings for the other thirty-eight filings.  In argument, Nabaya conveyed a particular desire to address ECF No. 153, filed the day of the hearing—108 days after the Court's May 3 deadline.  Nabaya noted he had given "the state" a copy of the motion, and without objection from the government, the Court allowed him to present argument.  Thus, the bulk of the four-hour omnibus hearing concerned Nabaya's forty-four motions viewed through the lens he most recently placed over his sovereign citizen arguments:  the eleventh-hour *Brady* Motions.[23]

---

[22] Throughout the hearing, the Court advised Nabaya to consult his standby counsel if necessary.  Improving on efforts in previous hearings, Nabaya consulted his standby counsel several times during the hearing.  Nabaya handled all oral arguments himself.

[23] During the August 18 omnibus hearing, the Court also heard argument on a pending request for a subpoena filed by the United States and issues related to the scheduling of Nabaya's jury trial, including speedy trial arguments.  The Court fully discusses the subpoena and the scheduling of Nabaya's jury trial in separately filed orders. (ECF Nos. 161, 162.)  The Court includes some backdrop of these procedural matters to provide context for other aspects of this Memorandum Opinion.

First, Nabaya failed to oppose, in writing, the "Motion of the United States for Issuance of an Order Compelling Production of Documents and Compliance with Trial Subpoena" (the "Motion for Subpoena"). (ECF No. 72.)  During the August 18 omnibus hearing, Nabaya objected to the Motion for Subpoena on Fifth Amendment grounds.  The Court explained to Nabaya that, because the United States filed the motion in May 2017, Nabaya had had ample opportunity to respond to the motion for a third-party subpoena.  After consulting with standby counsel, Nabaya conceded that he waived any opportunity to object.  The Court stated that it would grant the Motion for Subpoena. (ECF No. 161.)

Second, the Court had generally continued the trial earlier in light the competency determination and the countless motions submitted to the Court by Nabaya.  Most of those motions involved days excludable under the Speedy Trial Act.  *See* 18 U.S.C. § 3161(h)(1)(D) (excluding certain periods of delay in the computation of the time "within which the trial of any such offense must commence," such as any "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion").  Unsurprisingly, neither party articulated a definitive deadline imposed by the

## A. Nabaya Presented Nothing Suggesting the that United States Failed to Disclose *Brady* Evidence

The Court attempts to characterize Nabaya's non-linear presentation generously, culling a fair reading of his claims from the written *Brady* Motions and oral arguments he presented by bouncing back and forth among seemingly unrelated topics.

As to Nabaya's erstwhile *Brady* claims, like the other arguments he has unsuccessfully raised, Nabaya's understanding of the relevant rules or substantive law extended little beyond referencing a rule or case that did or did not pertain (or sometimes did not exist). Nabaya contended that the United States has withheld evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).[24] In effect, Nabaya attempted to convince the Court that the United States violated the *Brady* rule because it did not provide evidence that comports with his spurious

---

Speedy Trial Act by parsing through the dozens of motions that could have affected it. The United States, without counting any tolling for Nabaya's filings in a *pro se* capacity, proffered a conservative deadline of September 22, 2017. Nabaya presented no speedy trial deadline at all—despite asserting in some of his filings that his right to a speedy trial has been violated. CM/ECF, the Court's electronic filing system, listed a speedy trial deadline of October 18, 2017.

After argument from the parties, and over Nabaya's objection, the Court scheduled a three-day jury trial to commence on October 18, 2017. The Court continued the trial until that date because "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). In making this finding, the Court emphasized the number of filings submitted by Nabaya, which delayed the parties' preparation for trial. The Court also noted the obvious future need, given Nabaya's *pro se* status and his litigious history here, for additional time to address pretrial matters such as motions *in limine* and jury instructions. The Court informed the parties of the pretrial schedule, enlarging its standard deadlines for submitting pretrial filings. The Court ordered the parties to appear in open court on October 13, 2017, at 11:00 a.m., for a final pretrial hearing. These deadlines are reflected by Court order. (ECF No. 162.)

[24] Nabaya advances this argument in ECF Nos. 144, 145, 146, 147, 151, and 153. ECF No. 147 provides the Court with a sample order regarding Nabaya's *Brady* argument. The Court need not rule separately on that "Order." ECF Nos. 151 and 153 largely repeat arguments already submitted and seek to "expedite" the relief sought, *i.e.*, dismissal of the criminal charges. Because the Court heard argument on August 18, 2017, and decided all pending motions in this Memorandum Opinion, the Court need not address Nabaya's purported requests for expedited process. Indeed, the Court had a full hearing on the motion he filed ninety minutes before the omnibus hearing began.

theories of the case—theories that this Court has repeatedly disavowed. Stated differently, Nabaya resorted to levying disparaging accusations against the United States as a means of repeating frivolous, already-rejected arguments. Nabaya's deliberate efforts to ignore this Court's previous rulings did not go unnoticed.

Nabaya submitted various exhibits in support of his argument, all of which he could not authenticate and which had no relevance to the case at hand. Nabaya attempted to offer the following:

(1)     a document entitled "Brady Policy" that omits any reference to the issuing entity or agency, (Ex. A, ECF No. 156);

(2)     copies of licensing oath signed by the Assistant United States Attorneys for the Virginia State Bar ("VSB"), (Ex. C1, ECF No. 156-6; Ex. C2, ECF No. 156-7), and copies of oaths of admission for the federal public defenders in the Eastern District of Virginia, (unmarked exhibit, ECF No. 156-8);

(3)     copies of VSB "Mandatory Continuing Legal Education" ("MCLE") records of the prosecuting attorneys, including what appear to be descriptions of courses on *Brady* responsibilities, (Ex. B1, ECF No. ECF No. 156-1; Ex. B2, ECF No. 156-2);[25]

_____

[25] To the Court's deep and abiding dismay, Exhibits B1 and B2 imprudently displayed personal information about the prosecuting attorneys: their home addresses. At the Court's direction, the Clerk's Office has filed versions of those documents from which the home addresses are redacted.

The Court admonishes Nabaya that Local Criminal Rule 47(C) of the United States District Court for the Eastern District of Virginia requires that parties redact any personal identifiers before placing the identifying document in the court record. Local Rule 47(C) looks to Federal Rule of Criminal Procedure 49.1 for what constitutes "personal identifiers." Relevant here, Rule 49.1 provides that, "[u]nless the court orders otherwise, in an electronic or paper filing with the court that contains . . . the home address of an individual, a party or nonparty making the filing may include only . . . the city and state of the home address." Fed. R. Crim. P. 49.1(a)(5).

Local Criminal Rule 47(C)(2) specifically warns that: "The Clerk will not review each pleading for compliance with this Local Rule. Counsel and the parties are cautioned that *failure to redact these personal identifiers may subject them to sanctions*." (Emphasis added.) Going forward, Nabaya SHALL NOT submit unredacted documents containing personal identifiers regarding any individual. Moreover, Nabaya is notified that he risks inquiry into whether such conduct is meant to harass the federal officials involved in this prosecution. Any future attempt

(4)     copies of ready-to-fill, but blank, template forms for an
        Application and Affidavit for Search Warrant for a "United States
        District Court," (Ex. B3, ECF No. 156-3);

(5)     a copy of the first page of the opinion in *United States v. O'Dell*,
        160 F.2d 304 (6th Cir. 1947), (Ex. B4, ECF No. 156-4); and,

(6)     a copy of a document from the Virginia State Corporation
        Commission ("SCC") certifying that "Internal Revenue Service is
        not the name of any corporation existing under the laws of Virginia
        or of a corporation holding a certificate of authority to transact
        business in Virginia," (Ex. B5, ECF No. 156-5.)

Based on this "evidence," Nabaya urged the Court to dismiss the criminal charges against

him. Nabaya invoked procedural mechanisms for dismissal that do not exist.[26] Nabaya also

---

to manipulate or distort the trial process also risks the revocation of Nabaya's right to represent
himself. *See Frazier–El,* 204 F.3d at 560.

[26] In ECF No. 153, for example, Nabaya erroneously relies on Federal Rules of Criminal
Procedure 32(k)(1), which lists the requirements for a court's "judgment," and 60(b)(3), which
involves the enforcement of "victim's rights." Presumably, based on his statements in open
court, Nabaya thought that Rule 32(k)(1) provided the Court the authority to either dismiss him
or the prosecutors from this case because the rule states that "[i]f the defendant is found not
guilty or is otherwise entitled to be discharged, the court must so order." Fed. R. Crim.
P. 32(k)(1).
    In this context especially, Nabaya's argument misconstrues the rule. First, a rule about
"judgment" cannot pertain to a pretrial proceeding. And second, the Court cannot fulfill
Nabaya's desire to interpret Rule 32(k) in a way that gives credence to only the few words—*i.e.,*
to "discharge" parties from the case—that conceivably support his increasingly fantastical legal
theories. Rule 32(k) never applies to prosecutors and, in very limited circumstances, applies to
defendants who have judgments of conviction against them. Nabaya has not been convicted, and
Rule 32(k) cannot apply to him at this juncture.
    As to Criminal Rule 60(b)(3), nothing in this case implicates "victim's rights." Criminal
Rule 60(b)(3) involves the court's authority to fashion relief to victims of a crime when there are
multiple victims. Fed. R. Crim. P. 60(b)(3) ("If the court finds that the number of victims makes
it impracticable to accord all of them their rights described in these rules, the court must fashion
a reasonable procedure that gives effect to these rights without unduly complicating or
prolonging the proceedings."). Nabaya likely intended to cite Federal Rule of *Civil* Procedure
60(b)(3), which allows a court to grant relief from judgment for the following reasons: "fraud
(whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an
opposing party." The Federal Rules of Civil Procedure do not apply in this criminal case. (*See
infra* Section VI.C.)

essentially argued that the United States violated the *Brady* rule because it has not conducted his prosecution in a manner consistent with his frivolous theories of the case. For instance, Nabaya apparently contended that, because no "oaths" or "bonds" (such as Exhibits C1 and C2) were included in the 2,872 discovery documents provided to him, he has shown "material evidence" or a "material fact" of a *Brady* violation.[27] Nabaya offered no legal authority in support of his claim, and the Court sees none. *See Mullins v. Wells Fargo Bank*, N.A., No. 3:16cv841, 2017 WL 1202656, at *7 (E.D. Va. March 30, 2017) (characterizing documents requesting oaths of office as being "of no legal import" and "simply nonsensical"); *see also infra* Section VI.D (rejecting stand-alone "oaths" and "bonds" argument).[28] This Court has overruled Nabaya's "oaths" and "bonds" argument numerous times, and Nabaya's "exhibits" did not persuade the Court to modify the legal reasoning behind its previous decisions. Any failure by the United States to disclose "oaths" and "bonds" cannot undergird a valid *Brady* claim.

---

Ultimately, Nabaya's reliance on cherry-picked phrases from inapplicable rules falters, and, from here out, the Court will summarily reject such meritless arguments.

[27] Nabaya introduced three of his exhibits in support of this position. First, he proffered Exhibit A, an unauthenticated "Brady Policy" that supposedly showed the *Brady* procedures that the prosecuting attorneys were required to follow. That document, however, did not list the issuing agency or any other identifying information. Second, through Exhibits C1 and C2, Nabaya argued that the attorneys' oaths show, by their existence, the United States' failure to disclose them. Third, by submitting Exhibit B3, he pointed to the MCLE records to demonstrate that the prosecuting attorneys understand and have been trained in their obligations under *Brady*. Ultimately, Nabaya seems to argue that the prosecuting attorneys acted willfully in failing to disclose their "oaths" and "bonds," which do in fact exist and which, under some stated policy, should have been disclosed.

[28] Nabaya's occasional reference to Federal Rule of Criminal Procedure 47 also do not establish any requirement that a prosecuting attorney disclose his or her "oaths" and "bonds." Rule 47 states that "[a] motion *may* be supported by affidavit." Fed. R. Crim. P. 47(b) (emphasis added). It does not reference "oaths" and "bonds" at all, and it makes clear that a party need not include an affidavit when a criminal motion is filed.

Similarly, Nabaya argued that Exhibit B3, a template for an Affidavit of Search Warrant, demonstrates improper conduct because—in his mind—the only way the United States could legally levy his pension would be via a summons or warrant from a United States District Court. The absence of such a summons or warrant in the United States' discovery, he seems to contend, demonstrates that the United States engaged in conduct implicating *Brady*: lodging the levy improperly. Nabaya is wrong.[29] The Internal Revenue Service may employ more than one legal method to impose penalties or fines, and the absence of a summons or warrant is not inconsistent with a proper levy. *See Celauro v. I.R.S.*, 411 F. Supp. 2d 257, 264 (E.D.N.Y. 2006). The IRS did not need a summons or warrant from a district court to levy Nabaya's pension, and a *Brady* claim cannot stand on the failure to disclose something that does not exist.

Nabaya's arguments also veered to the absurd. Nabaya claimed that the IRS did not exist.[30] To do so, he proffered Exhibit B5, a copy of a Virginia SCC document stating that the "Internal Revenue Service is not the name of any corporation existing under the laws of Virginia or of a corporation holding a certificate of authority to transact business in Virginia." Of course, the IRS is not a Virginia corporation: it is a federal agency. This document does not mean that

---

[29] Nabaya's argument involving Exhibit B4 fails to pertain for the same reason: he incorrectly claims that the *O'Dell* case demonstrates only one way to properly seize properly through a levy. It does not so state. Nabaya's attempts to cite other cases in support of his arguments regarding the IRS's authority fail for identical reasons: Nabaya is unable or unwilling to read cases properly. His repeated attempts to manipulate isolated phrases to support his unsustainable theories not only fall flat but, when undertaken with this level of persistence, constitute an improper attempt to exploit the safeguards afforded to defendants by the federal criminal system.

[30] Nabaya argued that "no one owes any [federal] taxes," as evidenced by his "proof" that the IRS does not exist as a Virginia corporation. Of course, that argument has been overruled time and again by this Court and in the Fourth Circuit. *See, e.g.*, *United States v. Bartrug*, 777 F. Supp. 1290, 1292 (E.D. Va. 1991), *aff'd*, No. 91-5895, 1992 WL 259194, at *1 (4th Cir. Oct. 7, 1992); *see also United States v. Melton*, No. 94-5535, 1996 WL 271468, at *3 (4th Cir. May 22, 1996).

the IRS does not exist *at all*. The IRS exists as an entity fully cognizable in this federal court. Nabaya's proffered Exhibit B5 does nothing to alter that fact. The United States' supposed failure to inform Nabaya of the IRS's lacking corporate status in Virginia cannot support a *Brady* claim. Indeed, whether the IRS is a Virginia corporation has no relevance to this case, and the United States had no obligation to disclose it.

Nabaya submitted other meritless arguments in the *Brady* Motions but neglected to address them in open court. The Court will not address Nabaya's request for "grand jury minutes," which it previously denied, (*see* Apr. 19 Mem. Op. 23–25), or the series of questions directed to the prosecutors and Magistrate Judge Novak, which resemble some sort of criminal interrogatories. Nabaya provided the Court with no basis for submitting those accusatory queries, and the Court finds none. Accordingly, for the reasons stated in open court and in this Memorandum Opinion, the Court will deny Nabaya's *Brady* motions.[31] (ECF Nos. 144, 145, 146, 147, 151, 153.)

---

[31] In its response to the *Brady* Motions, the United States represented the following:

> [T]he United States takes very seriously its discovery and ethical obligations and wants to clarify any confusion on the defendant's part. The United States is well aware of its discovery obligations under *Brady*, *Giglio v. United States*, 405 U.S. 150 (1972), and their progeny, and it will fully meet those obligations. Further, the parties have an agreed discovery order that was entered shortly after the defendant's arraignment. (ECF No. 15.) The Supreme Court has cautioned repeatedly that a defendant's right to disclosure under Brady does not "create a broad, constitutionally required right of discovery." *United States v. Bagley*, 473 U.S. 667, 675 n.7 (1985). Indeed, "[a] defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the [government's] files," *Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987), nor does the right to exculpatory information require the prosecution to deliver its entire file to the defendant, *United States v. Agurs*, 427 U.S. 97, 109 (1976).
>
> Nevertheless, the United States believes that it has delivered all known materials in its possession to the defendant, aside from *Jencks* and *Giglio* materials. For over three months—well in advance of the deadlines in the agreed discovery order—the defendant has had in his possession four discovery

## B. After Denying the *Brady* Motions, the Court Warned Nabaya to Cease Filing Repetitive and Frivolous Motions

After highlighting the frivolity of Nabaya's recurring sovereign-citizen arguments, as well as the inapplicability of the rules and cases upon which his *Brady* Motions were based,[32] the Court warned Nabaya to cease his obvious backdoor attempts to raise the same sovereign-citizen arguments in different guises: here, that of a *Brady* claim. The Court explained that such a reckless abuse of procedure demonstrated that he did not understand the perils of self-representation and risked termination of his *pro se* status.[33]

To ensure that Nabaya is fully prepared for trial, the Court then ordered Nabaya's standby counsel to review—with Nabaya—the actual, relevant evidence provided by the United

---

productions from the United States (bates numbers 1-2872). The United States has provided all materials known to be in its possession from the Internal Revenue Service, the New York City Employees' Retirement System, and numerous federal and state courts. The United States emphasizes that to the extent any of the additional material or information exists and falls within the ambit of Rule 16, the *Brady/Giglio* line of cases, or the *Jencks* Act, it will continue to meet its disclosure obligations. To the extent that the defendant demands more than this, "*Brady* does not require the Government to investigate the defense's theory of the case or create evidence that might be helpful to the defense." *United States v. Makarita*, 576 F. App'x 252, 262 (4th Cir. 2014).

(Response of the United States to Def.'s Add'l Filings 5–6, ECF No. 152.)

[32] The Court briefly addressed Nabaya's remaining thirty-eight filings, explaining that a written opinion (this Memorandum Opionion) would follow. In open court, the Court informed Nabaya of its previous rulings, which—because Nabaya essentially reiterated arguments he has already lost—revealed Nabaya's steadfast refusal to accept the Court's decisions.

[33] *See Edwards*, 554 U.S. at 171 (noting that the right of self-representation "is not absolute"); *see also Faretta*, 422 U.S. at 834 n.46 (concluding that "[t]he right of self-representation is not a license to abuse the dignity of the courtroom" or "a license not to comply with relevant rules of procedural and substantive law" and that "serious and obstructionist conduct" can result in the termination of pro se status); *Frazier-El*, 204 F.3d at 560 (noting that "[t]he right [to self-representation] does not exist . . . to be used as a tactic for delay, for disruption, for distortion of the system, or for manipulation of the trial process").

States within seven days of August 18, 2017.[34]  The United States confirmed that it provided Nabaya with documents numbered 1 through 2872.

## VI.  Analysis:  The Remainder of Nabaya's Forty-Four Filings

In the wake of the August 18 omnibus hearing, the Court questions whether Nabaya actually appreciates the hazards of proceeding *pro se*.  On April 11, Nabaya stated in open court that he understood the nature of the charges against him, the penalties he faces, and the danger of proceeding without counsel.  The Court specifically informed Nabaya that, if he elected to proceed *pro se*, he would do so alone in a complex area of the law in which an attorney's experience and professional training would serve him well.  *See United States v. Parker*, 576 F. App'x 157, 162 (4th Cir. 2014).  Since then, Nabaya has continuously communicated his desire to represent himself in this matter.  At the same time, however, his haphazard legal strategies indicate a reckless disregard for the consequences of his actions.

The Court reminds Nabaya that it remains in his best interest to proceed with the assistance of counsel.  As the events to date—and the delays caused as a result—have undoubtedly demonstrated, *pro se* defendants encounter much difficulty when navigating the Federal Rules of Criminal Procedure, applicable and relevant case law, and the Local Criminal Rules of this Court.  These difficulties can result in a defendant's failure to utilize defenses or strategies that a lawyer would otherwise employ to strengthen that defendant's presentation.  For that reason, if Nabaya now wishes to obtain the assistance of counsel, the Court *strongly advises* that he do so.

That being said, whether Nabaya obtains counsel, utilizes standby counsel, or does neither, the Court admonishes him that his relentless bombardment of meritless filings will no

---

[34] Given that Magistrate Judge Novak revoked Nabaya's bond on August 25, 2017, the Court will extend that deadline until September 18, 2017.

longer be tolerated. The Court has afforded Nabaya wide berth, with input from two attorneys from the FPD and, later, standby counsel. But Nabaya has largely rejected that assistance. Nabaya is hereby on notice: this is the last time this Court will attempt to substantively address his repetitive and frivolous sovereign-citizen arguments. Going forward, this case proceeds to trial.

Below, and for the final time, the Court addresses the seven oft-repeated topics that Nabaya raises in his other thirty-eight filings: (1) subject-matter jurisdiction; (2) personal jurisdiction; (3) procedures or rules only permitted in civil suits; (4) sovereign-citizen theories of recovery; (5) writ of quo warranto; (6) violation of the Speedy Trial Act; and, (7) other ancillary requests.

## A.  This Court Has Subject-Matter Jurisdiction

This Court has subject-matter jurisdiction over Nabaya's criminal case. At least twenty-four of Nabaya's filings appear to challenge the Court's subject-matter jurisdiction to hear the criminal charges brought against him. (*See, e.g.*, ECF Nos. 61, 62, 64, 65, 69, 70, 71, 73, 76, 91, 94, 97, 98, 101, 102, 104, 108, 109, 112, 114, 115, 121, 127, 138.) At the root of Nabaya's argument lies the contention that "this court has not verified and certified subject matter jurisdiction on the record." (*See, e.g.*, Writ of Quo Warranto to Challenge Subject Matter Jurisdiction 4, ECF No. 97.) This baseless argument contravenes the record readily established in this case. Indeed, the Court has repeatedly addressed subject-matter jurisdiction in both open court and in writing. (*See, e.g.*, Apr. 19, 2017 Mem. Op. 6 n.13, ECF No. 55; Apr. 21, 2017 O., ECF No. 58.).

Again, subject-matter jurisdiction exists because 18 U.S.C. § 3231 provides district courts of the United States like this one with "original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." The Superseding Indictment plainly

alleges violations of federal law: (1) that Nabaya retaliated against a federal officer by false claim, in violation of 18 U.S.C. § 1521; and, (2) that Nabaya made a false statement in bankruptcy, in violation of 18 U.S.C. § 152(3). Accordingly, the Court has subject-matter jurisdiction over the criminal case against Nabaya.

### B.  This Court Has Personal Jurisdiction Over Nabaya

At least ten of Nabaya's filings purport to challenge the Court's personal jurisdiction over him. (ECF Nos. 65, 69, 73, 76, 99, 101, 104, 114, 127, 131.) They all fail. "A district court has personal jurisdiction over a defendant who 'is within the territory of the United States.'" *United States v. Johnson*, No. 09-CR-20049-DRH, 2009 WL 3672075, at *1 (C.D. Ill. Oct. 28, 2009) (citation omitted). Here, Nabaya is "within the territory of the United States," and the Superseding Indictment alleges that he committed the crimes charged in this judicial district, which makes venue proper too, *see* Fed. R. Crim. P. 18 ("Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed."). Therefore, the Court has personal jurisdiction over him.

### C.  Nabaya Cannot Invoke Civil Rules in a Criminal Case

Nabaya cannot invoke the Federal Rules of Civil Procedure or other civil practices in this criminal case. Nabaya's filings repeatedly assert "Compulsory Counter Claim[s] [and] Cross/Counter Complaints" against the attorneys for the United States and other government officials involved in this case. (*See, e.g.*, ECF Nos. 65, 69, 98, 99, 100, 131; *see also* ECF No. 71.) Motions invoking the Federal Rules of Civil Procedure, however, are procedurally improper in criminal matters. *See United States v. Sherman*, 451 F. App'x 281, 281 (4th Cir. 2011) (affirming district court order denying a prisoner's motion under Federal Rule of Civil Procedure 60(b) "[b]ecause the Federal Rules of Civil Procedure do not apply to [] criminal

matter[s]"). The Court will deny Nabaya's filings to the extent they seek to assert counterclaims or cross claims. (*See, e.g.*, ECF Nos. 65, 69, 71, 98, 99, 100, 131.)

Nabaya also purports to seek an emergency injunction as a basis for dismissing—or at least delaying—his pending criminal prosecution. (ECF Nos. 108, 111, 112.) The Fourth Circuit has already ruled on this argument, concluding that "Nabaya is not entitled to . . . injunctive relief . . . [because] Nabaya has failed to demonstrate any extraordinary circumstances warranting such relief." *In re: Shapat Ahdawan Nabaya, a/k/a Norman Abbott*, No. 17-1694, (4th Cir. July 14, 2017). For the same reason, the Court will deny Nabaya's filings here that seek emergency injunctions. (ECF Nos. 108, 111, 112.)

### D. The Court Will Not Entertain Nabaya's Other Frivolous Sovereign-Citizen Arguments

The sovereign-citizen arguments contained in Nabaya's other filings also do not warrant dismissal of this case. This Court previously admonished Nabaya "that [his] sovereign citizen arguments have no basis in fact or law." (Apr. 19, 2017 Mem. Op. 7 n.13.) Nonetheless, Nabaya again invokes numerous theories rooted in the sovereign-citizen movement. The Court will reject Nabaya's efforts to circumvent this Court's earlier decisions by invoking the same arguments in new ways. Indeed, each theory, as before, has no basis in fact or law.

First, as discussed above when addressing his *Brady* claim, Nabaya contends repeatedly that he is entitled to receive the "oaths" and "bonds" of the government officials involved in this case. (*See* ECF Nos. 59, 64, 65, 66, 69, 76, 81, 97, 98, 99, 100, 101, 109, 111, 112, 115, 121, 144, 145.) Nabaya's arguments, however, are "of no legal import and are simply nonsensical." *Mullins*, 2017 WL 1202656, at *7. Second, Nabaya's contention that the United States failed to abide by the "Rules of English Grammar," (Compulsory Demand for Abatement 1, ECF No. 116; *see also* ECF Nos. 64, 111), fails to state a basis for dismissing the criminal charges against

him.[35] As one district court in the Fourth Circuit explained: "The use of capital letters in the caption of the indictment is irrelevant to the issue of subject[-]matter jurisdiction," when the defendant has been addressed "both in court and on paper in a proper manner that clearly identifies" him or her. *United States v. Mitchell*, 405 F. Supp. 2d 602, 604 (D. Md. 2005); *see also United States v. Singleton*, No. 03-CR 175, 2004 WL 1102322, at *3 (N.D. Ill. May 7, 2004) (explaining that "it makes no sense to rest a jurisdictional distinction upon the use of all upper case letters or a mixture of upper and lower case letters. . . . [because t]he federal courts abandoned this level of formalism long ago").[36] Accordingly, the Court will deny all arguments arising from Nabaya's assertion that he is a "sovereign citizen."

### E. The Fourth Circuit Already Has Denied Nabaya's Writ of Quo Warranto

Nabaya has filed no less than six documents referencing a "Writ of Quo Warranto" as the basis for dismissing the pending criminal charges against him. (ECF Nos. 91, 94, 97, 98, 103, 109.) As noted above, the Fourth Circuit has already denied Nabaya's appeal pertaining to

---

[35] This argument appears based, at least in part, on the "redemptionist" theory, which the United States Court of Appeals for the Third Circuit explained as follows:

> [A] person has a split personality: a real person and a fictional person called the "strawman." The "strawman" purportedly came into being when the United States went off the gold standard in 1933, and, instead, pledged the strawman of its citizens as collateral for the country's national debt. Redemptionists claim that government has power only over the strawman and not over the live person, who remains free. Individuals can free themselves by filing UCC financing statements, thereby acquiring an interest in their strawman. Thereafter, the real person can demand that government officials pay enormous sums of money to use the strawman's name or, in the case of prisoners, to keep him in custody.

*Greene v. Pryce*, No. 15cv3527 MKB, 2015 WL 4987893, at *3 (E.D.N.Y. Aug. 18, 2015) (quoting *Monroe v. Beard*, 536 F.3d 198, 203 n.4 (3d Cir. 2008)). "Theories presented by redemptionists have been rejected by the courts as frivolous arguments." *Id.*

[36] The Court also sees no basis for exploring, in this criminal case, Nabaya's references, (*see, e.g.*, ECF No. 76), to the Uniform Commercial Code. *See, e.g.*, *Black v. Florida*, 4:09cv30-SPM/WCS, 2009 WL 1605410, at *3 (N.D. Fla. June 4, 2009) ("Petitioner's use of language from the Uniform Commercial Code, inapplicable to criminal proceedings, is also unavailing.").

that "Writ of Quo Warranto." In an opinion dated July 14, 2017, the Fourth Circuit explained

that "a private individual lacks standing to institute a quo warranto proceeding. Thus, Nabaya's

petition must be denied." *In re: Shapat Ahdawan Nabaya, a/k/a Norman Abbott*, No. 17-1694,

(4th Cir. July 14, 2017). Accordingly, the Court will deny all motions requesting or demanding a

"writ of quo warranto." (ECF Nos. 91, 94, 97, 98, 103, 109.)

**F.**    **Nabaya's Rights Under the Speedy Trial Act Have Not Been Violated**

Nabaya's rights under the Speedy Trial Act have not been violated. "The Speedy Trial

Act generally requires that a criminal trial begin within seventy days of the filing of an

information or indictment or the defendant's initial appearance." *United States. v. Henry*,

538 F.3d 300, 303 (4th Cir. 2008) (citing 18 U.S.C. § 3161(c)(1)). The Speedy Trial Act,

however, excludes certain periods of delay in the computation of the time "within which the trial

of any such offense must commence," such as any "delay resulting from any pretrial motion,

from the filing of the motion through the conclusion of the hearing on, or other prompt

disposition of, such motion." 18 U.S.C. § 3161(h)(1)(D).

Here, the Speedy Trial Act clock began running at Nabaya's Initial Appearance on

February 2, 2017. *See United States v Carey*, 746 F.2d 228, 229 n.1 (4th Cir. 1984) ("If

prosecution originates with an indictment, the period runs from the defendant's first appearance

after indictment."). The Speedy Trial Act clock first stopped when Nabaya filed the Motion to

Dismiss Indictment on February 17, 2017.[37] (ECF No. 20.) On April 11, 2017, the Court held a

hearing on the Motion to Dismiss Indictment. (ECF No. 52.) Accordingly, the Speedy Trial Act

---

[37] On multiple occasions, the Court has explained to Nabaya the operation of the Speedy Trial Act. (*See, e.g.*, March 30, 2017 O. 2, ECF No. 4 (finding that § 3161(h)(1)(D) automatically excluded any delay flowing from motions filed by Nabaya and alternatively finding that "continuing the trial serves the ends of justice and that the ends of justice served outweigh the best interest of the public and Nabaya in having a trial within the time prescribed by statute"); *see also* Apr. 21, 2017 O. 2 n.1 ("Any delay of the trial resulting from a motion filed by Nabaya will not be included when calculating the speedy-trial deadline under § 3161.").)

clock resumed running on that date. *See Henderson v. United States*, 476 U.S. 321, 326 (1986) ("The plain terms of the statute exclude all time between the filing of and the hearing on a motion, whether that hearing was prompt or not.").

On May 1, 2017, the United States filed a Motion for a Determination of Competency. (ECF No. 63.) Again, the Speedy Trial Act clock stopped on that date. *See* 18 U.S.C. § 3161(h)(1)(D). The Court held a hearing on and decided the Motion for a Determination of Competency on August 18, 2017. Thus, the clock resumed again on August 18, 2017, and as of that date, approximately thirty-five days total were not excluded by the filing of pretrial motions, meaning approximately thirty-five days of the seventy-day time limit had run. Accordingly, Nabaya's Speedy Trial Rights have not been violated and the Court will deny all motions advancing that argument. (ECF Nos. 112, 129, 138, 140.)

G.    **Nabaya's Other Arguments Do Not Support Dismissal**

Nabaya's various other arguments also do not persuade. First, as discussed in the analysis on the *Brady* Motions, Federal Rule of Criminal Procedure 47 does not require parties to file responsive affidavits to preclude dismissal of a case against a criminal defendant. (*See* ECF Nos. 61, 64, 66, 69, 71, 73.) Rule 47 states that "[a] motion *may* be supported by affidavit." Fed. R. Crim. P. 47(b) (emphasis added).[38] Second, also discussed when addressing the *Brady* Motions, Nabaya's contention that the IRS levied his pension illegally by failing to provide him with a summons issued by a district court misses the mark. (*See* ECF Nos. 61, 62.) The Internal Revenue Code authorizes multiple mechanisms for collecting delinquent taxes, including by administrative levy. *See Celauro*, 411 F. Supp. 2d at 264.

---

[38] Nabaya makes a similar argument invoking Federal Rules of Evidence 201(2) and 902(B)(4), which simply do not exist. (*See* ECF No. 66.) Construing Nabaya's filing liberally, he intended to cite Rule 902*(4)(B)*, which governs "certified copies of public records" and their introduction into evidence. That rule has no applicability here.

Third, Nabaya's pending *Bivens* action does not create a basis for dismissal of the case. (*See* ECF No. 65.) Magistrate Judge Novak already ruled that suing a presiding judge (or one's attorney) does not create a conflict of interest, (*see* Apr. 7, 2017 Mem. Order 3 n.1, ECF No. 51), and so has this Court, (Apr. 11 Hearing, ECF No. 52). Fourth, Nabaya's argument that the pending criminal matter cannot proceed against him without his consent, (*see* ECF Nos. 62, 109), fails. If Nabaya's position had merit, "it is hard to imagine that any indicted defendant would 'consent' to any proceedings against him, and the entire federal criminal code would be pointless." *Mitchell*, 405 F. Supp. 2d at 604.

Fifth, Nabaya's assertion that the mental competency evaluation requested by the United States was "conducted against his freewill," (ECF No. 140), lacks merit. The United States did not need Nabaya's permission because "the attorney for the Government may file a motion for a hearing to determine the mental competency of the defendant . . . at any time after the commencement of a prosecution for an offense." 18 U.S.C. § 4241(a). Sixth, this Court has already rejected Nabaya's argument, (*see* ECF Nos. 61, 135, 138), that the charges pending against him violate his First Amendment Rights. (*See* Apr. 19, 2017 Mem. Op. 8–17.) Seventh, and finally, the Court previously rejected Nabaya's contention, (*see* ECF Nos. 111, 138, 139), that the indictment against him is defective. (*See* Apr. 19, 2017 Mem. 17–19.)[39] Therefore, the Court will also deny those arguments.

---

[39] Nabaya has also filed a "Compulsory Order to Dismiss," (ECF No. 117), and a "FOIA Request," (ECF No. 134), both of which articulate no basis for relief at all. The Court will deny those filings.

## VII.  Conclusion

For the foregoing reasons, the Court will deny Nabaya's forty-four pretrial filings.  (ECF

Nos. 59, 61, 62, 64, 65, 66, 69, 70, 71, 73, 76, 91, 94, 97, 98, 99, 100, 101, 102, 103, 104, 108,

109, 111, 112, 114, 115, 116, 117, 121, 127, 129, 131, 134, 135, 138, 139, 140, 144, 145, 146,

147, 151, 153.)

An appropriate Order shall issue.

/s/

M. Hannah Lauck
United States District Judge

Richmond, Virginia
Date: 9/5/17

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

**UNITED STATES OF AMERICA**

**v.**                                                                                  **Criminal No. 3:17cr3**

**SHAPAT AHDAWAN NABAYA,**
*also known as Norman Abbott,*

**Defendant.**

### RULES GOVERNING DECORUM IN THE COURTROOM

When appearing in the United States District Court for the Eastern District of Virginia,

unless excused by the presiding judge, all counsel or any person in the courtroom shall abide by

the following:

1) In presentations before the Court, parties proceeding *pro se* shall observe the same rules of decorum which apply to attorneys.

2) Follow the Federal Rules of Evidence, the Federal Rules of Criminal Procedure, the Local Rules for the United States District Court for the Eastern District of Virginia, and all rules of courtroom decorum.

3) Specifically, as to Nabaya, the right to proceed *pro se* is contingent upon his following the Federal Rules of Evidence, the Federal Rules of Criminal Procedure, the Local Rules for the Eastern District of Virginia, and all rules of courtroom decorum.

4) Stand as Court is opened, recessed, or adjourned.

5) Stand when addressing, or being addressed by, the Court.

6) Stand at the lectern while speaking to the Court or when examining any witness.

7) No person may testify from the lectern. If Nabaya wishes to offer his version of events, he must do so, under oath, from the witness stand. Of course, Nabaya is not required to offer any evidence, to testify, or even to question the government's witnesses in this criminal matter.

8) Only the courtroom security officer shall be allowed to present exhibits to the witnesses or the Court.

9) Stand at the lectern while making opening statements or closing arguments.

10) Avoid disparaging personal remarks or acrimony toward opposing counsel, the Court, litigants, witnesses, or any person in the courtroom.

11) Refer to all persons, including witnesses, other counsel, and the parties by their surnames and not by their first or given names.

12) In examining a witness, counsel or any party proceeding *pro se* shall not repeat or echo the answer given by the witness.

13) Only one attorney for each party, or any party acting *pro se*, shall examine or cross-examine each witness. The person stating objections (if any) during direct examination shall be the attorney or party acting *pro se* recognized for cross-examination.

14) Request permission before moving anywhere in the courtroom.

15) Any paper or exhibit not previously marked for identification should first be submitted to the Clerk for marking before it is presented to a witness. Any exhibit offered into evidence should, at the time of such offer, be handed to opposing counsel.

16) In making objections, counsel or any party proceeding *pro se* should briefly state only the legal grounds therefore without further elaboration unless explanation is requested by the Court.

17) Once an objection has been ruled upon, no party may continue to re-argue that objection.

18) In opening statements and in arguments to the jury, counsel, or any party proceeding *pro se*, shall not express personal knowledge or opinion concerning any matter in issue.

19) Counsel, or any party proceeding *pro se*, may not state a factual assertion unsupported by sworn evidence in front of the jury via questioning, objection, or any argument.

20) Counsel, or any party proceeding *pro se*, shall instruct all persons at counsel table that gestures, facial expressions, audible comments, or the like, as manifestations of approval or disapproval during the testimony of witnesses or at any other time, are absolutely prohibited.

21) All counsel, and any party proceeding *pro se*, shall dress in an appropriate manner consistent with the requirements of decorum and dignity appropriate to the courtroom.

22) If Nabaya refuses to abide by all of these rules, he can be found in contempt, he can lose his right to proceed *pro se*, or, under certain circumstances, the trial can continue without his presence in the courtroom.

The standards set forth above are minimal, not all-inclusive, and are intended to supplement, not supplant or limit, the ethical obligations of counsel under the Rules of Professional Conduct, and the obligations of any party seeking to appear *pro se*. The Court may at any time announce and enforce additional requirements or prohibitions, or may excuse compliance with any one or more of these standards.