IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**UNITED STATES OF AMERICA,**

v.                                                          **Criminal Action No. 3:17cr3**

**SHAPAT AHDAWAN NABAYA,**

        **Defendant.**

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Shapat Ahdawan Nabaya's Motions for Compassionate Release pursuant to Section 603(b) of the First Step Act (the "Motions"). (ECF Nos. 403, 427, 430, 460, 463, 467.) The United States responded in opposition (the "Opposition"). (ECF No. 443.) Nabaya replied. (ECF No. 451.) The matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons that follow, the Court will deny the Motions for Compassionate Release.

### I. Background

On April 4, 2017, a Grand Jury sitting in the Eastern District of Virginia returned a two-count indictment (the "Superseding Indictment") against Nabaya. (ECF No. 43.) The Superseding Indictment recounted the history of the various civil lawsuits that served as the backdrop for the charges brought against Nabaya. (Superseding Indictment ¶¶ 1–20.) Those lawsuits, which Nabaya initiated, followed an Internal Revenue Service ("IRS") levy of his retirement pension. (*Id.*)

Count One of the Superseding Indictment alleged that Nabaya retaliated against a federal officer by false claim, in violation of 18 U.S.C. § 1521. (*Id.* 5–6.) Count Two of the

Superseding Indictment alleged that Nabaya made a false statement in bankruptcy, in violation of 18 U.S.C. § 152(3). (*Id.* 6.) After proceeding to trial and representing himself with standby counsel, a jury found Nabaya guilty on both charges. (ECF No. 217.)

Prior to sentencing, a Probation Officer determined that Nabaya faced a total offense level of 20. (Presentence Investigation Report ("PSR") ¶ 53, ECF No. 280.) The Probation Officer also determined that Nabaya fell into Criminal History Category I. (PSR ¶ 60.) Based on this information, Nabaya faced a Sentencing Guidelines range of 33 to 41 months' imprisonment. (*Id.* 16.) At sentencing, the Court imposed an upward variance sentence of 71 months' imprisonment on the § 1521 offense and 60 months on the § 152 offense, to run concurrently. (J. 2, ECF No. 306.) Nabaya appealed and the United States Court of Appeals for the Fourth Circuit affirmed his convictions and sentence. *United States v. Nabaya*, 765 F. App'x 895, 897 (4th Cir. 2019). Nabaya has unsuccessfully sought postconviction relief. (*See generally* Docket Sheet.)

Nabaya is currently housed at Seagoville FCI. The Bureau of Prisons ("BOP") states that Nabaya will be released on August 1, 2022 and considered for placement in a residential reentry center before his release date. *See* Bureau of Prisons, *Fed. Inmate Locator*, https://www.bop.gov/inmateloc/. As of December 28, 2020, the BOP reports that 1246 inmates at Seagoville FCI have tested positive for COVID-19. *See* Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/.

In his Motion for Compassionate Release, Nabaya describes his circumstances at Seagoville FCI:

> Due to the covid-19 pandemic, the Plaintiff's age, the lack of three hot meals per day and a poor diet supplied by BOP, Plaintiff does qualify for home confinement. Plaintiff is being treated inhumanly by receiving two bag lunches as his diet. Plaintiff is being mistreated by BOP, Warden Zook and medical staff because there

> is no medical staff on duty after 4:00pm. Plaintiff had to call his wife and daughter to have them call 911 when Plaintiff was spitting up blood.

(Mot. 1, ECF No. 403.)

On July 8, 2020, in response to Nabaya's request for compassionate release, the Court ordered Nabaya to inform the Court no later than July 31, 2020 whether he preferred that court-appointed counsel represent him or whether he would prefer to proceed *pro se* and without counsel. (July 8, 2020 Order, ECF No. 421.) Nabaya did not request that court-appointed counsel assist him with his compassionate release motions. On August 6, 2020, Nabaya informed the Court that he had tested positive for COVID-19. (ECF No. 427.) Five days later, on August 11, 2020, the Court instructed the United States to file a response to Nabaya's Motions for Compassionate Release. (Aug. 11, 2020 Order, ECF No. 428.)

One week later, on August 18, 2020, the Court received another compassionate release request from Nabaya. In that Motion, Nabaya claims he "qualifies for compassionate release based on health conditions, age and the security of the community or any person." (Mot. 1, ECF No. 430.) Nabaya further explains that the Court should grant him compassionate release because he suffers from diabetes and has been told that he has a spot on his lung:

> BOP medical records show that Petitioner has spots on his left lung and other issues with his lung and he is diabetic. BOP has informed Petitioner of this matter April of 2020. BOP medical records show that Petitioner tested negative for COVID-19 on July 7, 2020, Petitioner was tested again on July 11, 2020 and tested positive. The BOP has put Petitioner in an environment with inmates who were positive for COVID-19. Petitioner is in danger because out of 1800 inmates over 1300 are positive for the CORONA VIRUS. Petitioner is in fear of his life because of the deaths and inmates to the point of emergency hospital care. Inmates as well as staff suffer from high fevers, bathroom runs, lack of smell and taste and in some case pneumonia from COVID-19. Petitioner is 62 years old and at a higher risk if kept in this COVID-19 environment.

(*Id.*)

3

The United States opposes Nabaya's request for compassionate release, arguing that Nabaya has "already recovered from COVID-19 and provides no evidence that he is at a greater risk for re-infection that constitutes 'extraordinary and compelling' reasons for release. In addition, the factors under 18 U.S.C. § 3553(a) weigh strongly against release." (Opp'n 1, ECF No. 443.) For purposes of considering Nabaya's motions, the United States assumes that Nabaya has exhausted his administrative remedies. (*Id.* 5.) The United States avers that Nabaya has no treatment needs, (*id.* 3), but acknowledges that his medical records discuss Nabaya's "possible lung mass" and diabetes, (*id.* 7–8). The United States further confirms that Nabaya tested positive for COVID-19 while in Seagoville FCI:

> The defendant's medical records confirm that he tested positive for COVID-19 from a specimen collected on July 7, 2020. He was placed in isolation thereafter. Fortunately, as of July 31, 2020 the prison's health services determined that he was 'not severely immunocompromised and did not have a severe illness requiring hospitalization.' He was released from isolation on that date. It appears that Mr. Nabaya recovered without needing any additional medical treatment or a ventilator. Although unfortunate that the defendant contracted this terrible illness, he seemed to survive it quite well. Throughout July and early August the defendant continued to send *pro se* legal filings to this Court and the United States Court of Appeals for the Fourth Circuit.

(*Id.* 6 (internal citations omitted); *see also* ECF No. 477–1.) Although the United States claims that Nabaya "does not have medical conditions that would cause him to be at greater risk for reinfection of COVID-19," (*id.* 8), the United States also argues that the sentencing factors weigh against granting Nabaya compassionate release, (*id.* 9).

## II. Legal Standard: Compassionate Release Under the First Step Act of 2018

In 2018, Congress enacted the First Step Act to provide incarcerated individuals the opportunity to directly petition the courts for compassionate release under 18 U.S.C.

§ 3582(c)(1)(A).[1] Prior to the First Step Act in 2018, the BOP had the sole authority to petition the court for sentence modifications on compassionate release grounds. *Coleman v. United States*, No. 4:17cr69, 2020 WL 3039123, at *1 (E.D. Va. June 4, 2020). Following enactment of the First Step Act, criminal defendants may petition courts on their own initiative to modify their sentences if "extraordinary and compelling reasons warrant such a reduction." *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). Before granting a reduction, courts must consider the factors set forth in 18 U.S.C. § 3553(a), *see* 18 U.S.C. § 3582(c)(1)(A), and evidence of rehabilitation and other post-conviction conduct. *See United States v. Martin*, 916 F.3d 389, 397–98 (4th Cir. 2019) (requiring consideration of post-conviction evidence and statutory sentencing factors in the context of a sentence reduction sought pursuant to § 3582(c)(2)). However, a petitioner's rehabilitation alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t).

---

[1] Section 3582(c)(1)(A) states:

The court may not modify a term of imprisonment once it has been imposed except that—(1) in any case—(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that—

> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

5

A.   **Exhaustion of Administrative Remedies**

Although the Court generally cannot "modify a term of imprisonment once it has been imposed," the defendant may bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. . . ." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. McCoy*, 981 F.3d 271, 283 (4th Cir. 2020) ("Congress, aware of the BOP's history of extensive delays, also provided a '30-day lapse' alternative, under which a defendant may proceed directly to district court if his [or her] request is not acted on within that time."). "Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court." *Casey v. United States*, No. 4:18cr4, 2020 WL 2297184, at *1 (E.D. Va. May 6, 2020).

The court may waive the exhaustion requirement, however, in certain circumstances. *United States v. Jones*, No. 3:11cr249, ECF No. 47, at *2–3 (E.D. Va. Apr. 3, 2020) (Lauck, J.). Courts may waive exhaustion if: "pursuing an administrative remedy would be futile[,]" "'exhaustion via the agency review process would result in inadequate relief[,]' or 'pursuit of agency review would subject the petitioner to undue prejudice.'" *United States v. Robinson*, No. 3:10cr261, 2020 WL 4041436, at *3 (E.D. Va. July 17, 2020) (Lauck, J.) (quoting *Poulios v. United States*, No. 2:09cr109, 2020 WL 1922775, at *1 (E.D. Va. Apr. 21, 2020) (Jackson, J.)).

Throughout the country, courts have found the coronavirus pandemic, combined with a vulnerable defendant with underlying health conditions, implicates all three exceptions justifying a waiver of the exhaustion requirement. *See United States v. Zukerman*, 451 F. Supp. 3d 329, 332–33 (S.D.N.Y. 2020) (holding that defendant's elderly age and serious health conditions

6

warrant a waiver of exhaustion requirements because of the ongoing risk of infection while incarcerated); *United States v. Perez*, 451 F. Supp. 3d 288, 293 (S.D.N.Y. 2020) (waiving the exhaustion requirement because exhaustion would be futile as defendant would not see thirty days lapse before his release date).

### B. Courts Must Find Extraordinary and Compelling Reasons Justifying Compassionate Release

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify terms of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The United States Sentencing Commission further defines "extraordinary and compelling reasons." U.S.S.G. § 1B1.13, n.1; *see United States v. Kalivretenos*, No. 1:15cr00073, ECF No. 109, at *4 (E.D. Va. May 21, 2020). The Sentencing Commission identifies four instructive categories of extraordinary and compelling reasons that allow for a sentence to be modified: the petitioner's medical condition, age, family circumstances, and other reasons. U.S.S.G. § 1B1.13, n.1 (A)–(D).

The United States Court of Appeals for the Fourth Circuit has explained, however, that "[w]hen a defendant exercises his [or her] new right to move for compassionate release on his [or her] own behalf . . . § 1B1.13 does not apply, and . . . § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts." *McCoy*, 981 F.3d at 281. "As of now, there is no Sentencing Commission policy statement 'applicable' to the defendants' compassionate-release motions, which means that district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction." *Id.* at 283. As a result of the coronavirus outbreak, "courts have found extraordinary and compelling reasons for compassionate release

7

when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Feiling*, No. 3:19cr112, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020) (citations omitted).

### C. Courts Must Weigh the Statutory Sentencing Factors Before Granting Compassionate Release

Even after finding a sufficient "extraordinary and compelling reason" for compassionate release, the Court must then consider the § 3553(a) factors and any relevant postconviction conduct before modifying a defendant's sentence. 18 U.S.C. § 3582(c)(1)(A). The Court must weigh factors including "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The Court also must consider "the need for the sentence imposed to promote respect for the law . . . ; to afford adequate deterrence to criminal conduct; . . . [and] to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2). The statutory sentencing factors direct the Court to consider the kinds of sentences available and the sentencing range established for the offense. 18 U.S.C. § 3553(a)(4).

The Guidelines policy statement concerning compassionate release, though not binding, further instructs Courts to consider the 18 U.S.C. § 3142(g) factors. U.S.S.G. § 1B1.13.[2] These

---

[2] The United States Sentencing Guideline § 1B1.13 provides that:

Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
    (1) (A) extraordinary and compelling reasons warrant the reduction; or
    (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

8

include "the nature and circumstances of the offense charged . . . ; the history and characteristics of the person . . . ; [and,] the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

### III. Analysis

After due consideration, the Court will deny the Motion because Nabaya does not present extraordinary and compelling circumstances sufficient to necessitate compassionate release.

The Court first determines that Nabaya has sufficiently exhausted his administrative remedies. Alternatively, the Court deems such requirement waived so Nabaya does not suffer prejudice for any delay in reviewing his motions during the ongoing COVID-19 public health crisis.

The Court next determines that the record does not show Nabaya's health conditions constitute extraordinary and compelling circumstances that render him eligible for compassionate release consideration. Courts have found extraordinary and compelling reasons for compassionate release "when an inmate shows both a particularized susceptibility to the disease *and* a particularized risk of contracting the disease at his prison facility." *Feiling*, 2020 WL 1821457, at *7 (emphasis added). Here, Nabaya has already contracted and—thankfully— recovered from COVID-19. (*See* ECF No. 468 at 3 (Nabaya's medical records showing COVID-19 resolved as of July 31, 2020); ECF No. 477 at 1 (same).) While Nabaya shows that the conditions of his confinement created a particularized risk of contracting the disease, he does not provide medical records to show that he suffers a particularized susceptibility to reinfection of

---

(2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
(3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

9

the disease or harm therefrom. Rather, as the United States notes, Nabaya appears to have recovered from the virus without any serious complications. Despite his suggestions otherwise, Nabaya, presents as a seemingly healthy person, lacking specific ailments apart from the limited information regarding an undefined spot on his lung and his purported diabetes.[3] Considering that Nabaya has already recovered from COVID-19, his asserted health conditions, without more, do not persuade this Court to grant compassionate release.

Even if Nabaya's medical conditions entitled him to compassionate release consideration, the Court finds that the relevant statutory sentencing factors and Guidelines policy statement do not support immediate release. Pursuant to U.S.S.G § 1B1.13, the Court *may* consider whether extraordinary and compelling reasons warrant the reduction, whether the defendant is a danger to the safety of any other person or to the community as provided in § 3142(g), and whether the reduction is consistent with the policy statement. *See McCoy*, 981 F.3d at 282 n.7 (noting that § 1B1.13 "remains helpful guidance even when motions are filed by defendants"). Although Nabaya's record lacks violent offenses, his continued disregard for the law shows that he presents a danger to the community and should not be immediately released. Nabaya claims sovereign citizenship and generally defies Court orders and the rule of law. For instance, in the underlying case, Nabaya made a "veiled threat" to a Chesterfield County General District Court clerk, as well as a more direct threat to the Clerk's Office of this Court. (PSR ¶¶ 32–33). He also "obtained and published in the court record the home addresses of the prosecuting attorneys" in this case. (*Id.* ¶ 36). When the Court sentenced him in the underlying criminal

---

[3] The medical records provided to the Court do not establish that Nabaya has diabetes. (*See* ECF No. 427, 468.) Nabaya submitted medical records indicating that as of April 2020 he has prediabetes. (ECF No. 468 at 3.) The same set of medical records include notes from a chest exam dated July 21, 2020 that reports "Lungs are clear. No acute infiltrates." (*Id.* at 9.)

10

case, Nabaya had filed over 100 meritless "motions, notices, or affidavits of truth" as well as 36 meritless lawsuits, and had been barred from filing future civil lawsuits without meeting certain criteria. (Feb. 27, 2018 Sent Tr. 35–39, ECF No. 326). Nabaya continues to show a disregard for the law even after having his convictions and sentences affirmed on appeal, clogging this Court's docket with more than 50 meritless post-conviction motions and filings since 2019. The need for continued deterrence of such misconduct weighs against Nabaya's request for relief.

Turning to the § 3553(a) factors, the Court acknowledges that Nabaya has served most of his sentence. Additionally, upon release Nabaya will begin to serve a three-year supervised release term for his offense. While the Court finds that this sentence adequately deters criminal conduct, the Court determines that the seriousness of Nabaya's offense and the need to protect the public outweigh immediate release .

The Court further notes that Nabaya does not present information that he has made demonstrable efforts while in prison to improve himself or that other rehabilitative factors favor his early release. In *United States v. Martin*, the Fourth Circuit vacated and remanded the district court's denial of both defendants' motions to reduce sentence because the district court failed to address any new mitigating evidence when denying the motions. 916 F.3d at 397–98. The Fourth Circuit explained that if an individual is eligible for a sentence reduction, the district court must give weight to the person's "past transgressions" as well as "the multitude of redemptive measures that [the person] has taken." *Id.* at 397. Here, Nabaya does not argue that he has undertaken redemptive measures or made steps toward rehabilitation through his current prison term. The Court observes that Nabaya has committed only one disciplinary infraction while incarcerated and has participated in a few BOP programs, (Opp'n Exs. 1–2, ECF No. 443), but based on the seriousness of his crimes, the need to deter criminal conduct, and the lack of

documented health concerns, the Court concludes that the record before it does not justify Nabaya's early release from federal imprisonment.

## IV. Conclusion

For the reasons explained above, the Court will deny the Motions. (ECF Nos. 403, 427, 430, 460, 463, 467.)

An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Date: 1-6-21
Richmond, Virginia