IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,

v.                                                             Criminal Action No. **3:17CR03**

SHAPAT AHDAWAN NABAYA,

      Petitioner.

## **MEMORANDUM OPINION**

Shapat Andawan Nabaya, a federal inmate proceeding *pro se*, filed this 28 U.S.C. § 2255

Motion ("§ 2255 Motion," ECF No. 364).[1] In his § 2255 Motion, Nabaya demands relief upon

the following grounds:

| | |
|---|---|
| Claim One | Nabaya's right to a speedy trial under the Sixth Amendment[2] and Speedy Trial Act[3] were violated. (ECF No. 364, at 4.) |
| Claim Two | Nabaya failed to receive the effective assistance of counsel: (a) "William J. Dinkin did practice law with a convicted felon, Wesley H. Robinson." (*Id.* at 5.)[4] (b) "Also, appeals counsel did practice law with Robinson. Alex F. Kochanowski was appeals counsel who was hired by Robinson. Court orders forbid Robinson from practicing law. I was defrauded of $20,000." (*Id.* (citation omitted).) (c) "Dinkin told me to raise my speedy trial issue on appeal." (*Id.*) |

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the capitalization, spelling, and punctuation in the quotations from Nabaya's submissions.

[2] "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. Const. amend. VI.

[3] 18 U.S.C. § 3161 *et seq.*

[4] Nabaya refers to Hugh Wesley Robinson. *See United States v. Johnson*, 327 F.3d 554, 557 (7th Cir. 2003). "In 1985, the Ohio Supreme Court permanently disbarred Robinson from the practice of law following a federal criminal conviction for mail fraud." *Id.* Thereafter, "Robinson served as [National Legal Professional Associates] NLPA's Administrative Director and Director of Case Analysis and Research." *Id.* "NLPA was an Ohio-based firm providing pretrial, sentencing, and post-conviction consulting services." *Id.*

(d) Kochanowski never raised the speedy trial issues on appeal. (*Id.*)

(e) "Both attorneys never assisted me in obtaining Jencks/Brady[5] materials." (*Id.*)

(f) "Dinkin never raised my *Batson*[6] issues concerning a racially balanced jury. I raised that issue about 5 days before trial." (*Id.*)

(g) "Dinkin lost my discovery while I was in custody at the Northern Neck Regional Jail." (*Id.*)

(h) "Kochanowski never provided me with the discovery when I asked him. How can Kochanowski appeal my case with no discovery?" (*Id.*)

Claim Three    "Six Amendment, Right to call witnesses." (*Id.* at 6.)[7]

(a) "I personally filed subpoenas for witnesses and evidence and was denied by the sentencing court." (*Id.*)

(b) "My attorneys Joseph S. Camden and Mary E. Maguire never filed a bill of particulars for me after I e-mailed and called them for three days about this." (*Id.*)

(c) "They never performed any investigative work in my case."

The Government responded and Nabaya has filed multiple reply briefs. The Court notes that Nabaya cannot add new claims by a passing reference in his reply briefs. *See Snyder v. United States*, 263 F. App'x 778, 779–80 (11th Cir. 2008) (refusing to consider petitioner's statement in a reply brief as an attempt to amend his § 2255 motion to add a new claim); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 847 F. Supp. 2d 843, 851 n.9 (E.D. Va. 2012); *Equity in Athletics. Inc. v. Dep't of Educ.*, 504 F. Supp. 2d 88, 111 (W.D. Va. 2007) (citations omitted) (explaining that "new legal theories must be added by way of amended pleadings, not by arguments asserted in legal briefs"). "[I]t is axiomatic that [a petition] may not be amended by the briefs in opposition to a motion to dismiss. To hold otherwise would mean that a party could

---

[5] *Brady v. Maryland*, 373 U.S. 83 (1963); 18 U.S.C. § 3500.

[6] *Batson v. Kentucky*, 476 U.S. 79 (1986).

[7] "In all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

unilaterally amend a [petition] at will, even without filing an amendment, and simply by raising a point in a brief." *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) (internal citations omitted).

Nabaya, however, explicitly seeks to amend his § 2255 Motion to bring an additional claim in his Motion to Supplement filed on February 3, 2020. (ECF No. 387.) The Court addresses Nabaya's Motion to Supplement in Part III.A below.[8]

For the reasons set forth below, Nabaya's § 2255 Motion and his related motions will be DENIED.

## I.  Pertinent Factual and Procedural History

On January 11, 2017, Nabaya was charged in a two-count indictment with retaliating against a federal officer by making a false claim or account of the performance of his or her official duties, in violation of 18 U.S.C. § 1521 (Count One) and false statement in a bankruptcy proceeding, in violation of 18 U.S.C. § 152(3). (ECF No. 1.) On February 2, 2017, Nabaya was arrested and Joseph Camden and Mary Maguire of the Office of the Federal Public Defender were appointed to represent him. On April 4, 2017, the grand jury issued a Superseding Indictment to correct a clerical error. (ECF No. 43.)

Thereafter, at a hearing on April 11, 2017, the Court found that a "breakdown in communication between Nabaya and his counsel" had occurred which "required the Court to find that then-counsel could not provide adequate representation, even in standby status." (ECF No. 53, at 1–2.) The Court allowed the appointed attorneys to withdraw and granted Nabaya's request to proceed *pro se*. (ECF No 52.) On April 19, 2017, the Court appointed William "Bill"

---

[8] Nabaya has submitted a host of other motions related to his § 2255 Motion.

Dinkin, as stand-by counsel. (ECF No. 57.) In the months that followed, Nabaya filed scores of frivolous motions which the Court denied.

On October 18, 2017, Nabaya's jury trial began. Nabaya represented himself, with stand-by counsel Bill Dinkin present. (ECF No. 215.) On October 19, 2017, the jury found Nabaya guilty of both counts in the Superseding Indictment. (ECF No. 217.) On February 27, 2018, the Court sentenced Nabaya to seventy-one months of imprisonment. (ECF No. 298, at 2.) Nabaya appealed.

Nabaya retained Alex Francis Kochanowski to represent him on appeal. *United States v. Nabaya*, No. 18–4134 (4th Cir. Apr. 23, 2018) ECF No. 16. The United States Court of Appeals for the Fourth Circuit provided the following summary of the evidence and the procedures in this Court:

> The Government presented evidence that Nabaya had failed to pay income taxes as early as 2007. In 2012, in order to collect on the overdue tax liability, the Internal Revenue Service notified Nabaya of its intent to levy on his pension. After receiving no response to this notice, in January 2013, the IRS levied on Nabaya's pension. Revenue Officer Wally Stark issued to Nabaya a notice of intent to levy. Nabaya thereafter contacted Stark, who reduced the amount of the monthly garnishment and attempted to work with Nabaya to develop a payment schedule.
>
> Nabaya began hand delivering and mailing letters to Stark "at least weekly" threatening to sue him and other government employees and asserting that the IRS had no rights against him. In one of these letters, Nabaya threatened to hang Stark and stated that he "had enough rope to hang every employee at the IRS as well." These letters continued from the date of the release of the levy in April 2013 until Stark retired in July 2016. Nabaya filed numerous lawsuits against Stark personally, alleging that Stark wrongfully levied on his pension. He also challenged the levy in tax court. All these lawsuits were dismissed as meritless, and the District Court for the Eastern District of Virginia enjoined Nabaya from filing future lawsuits in federal court against federal employees challenging the levy.
>
> In May 2013, Nabaya filed a mechanic's lien against the real and personal property of Wally Stark, representing that Stark owed Nabaya $6,564 for having unlawfully restrained Nabaya's pension. The filing of this lien and Nabaya's numerous lawsuits against Stark form the basis for the charge of retaliation against a federal officer by filing a false claim. On August 17, 2016, Nabaya filed an involuntary bankruptcy petition against Stark in the bankruptcy court for the

4

Eastern District of Virginia. He alleged, under penalty of perjury, that Stark owed him $50,000 for a personal injury based on Stark having improperly and illegally levied his pension. The bankruptcy court dismissed the bankruptcy case on September 22, 2016. The filing of this petition is the basis for the charge that Nabaya filed a false statement in bankruptcy.

. . . .

A conviction may be obtained under § 1521, when the defendant files, attempts to file, or conspires to file, in any public record or in any private record which is generally available to the public, any false lien or encumbrance against the real or personal property of an individual described in section 1114, on account of the performance of official duties by that individual, knowing or having reason to know that such lien or encumbrance is false or contains any materially false, fictitious, or fraudulent statement or representation.

18 U.S.C. § 1521. Nabaya contends that the evidence was insufficient to show that he knew or had reasons to know that the lien was false and asserts that he believed that Stark had committed theft by levying funds from Nabaya's pension.

Similarly, to obtain a conviction under 18 U.S.C. § 152(3), the Government had to prove that Nabaya "knowingly and fraudulently ma[de] a false declaration, certificate, verification, or statement under penalty of perjury . . . in or in relation to any case under title 11." 18 U.S.C. § 152(3). Here, the Government produced evidence that Nabaya filed an involuntary bankruptcy petition against Stark, claiming a debt of $50,000 for personal injury and claiming that Stark stole funds from his pension. The Government also presented evidence that Nabaya had filed lawsuits against Stark challenging the validity of the levy and these actions were dismissed as meritless, thus presenting an inference that Nabaya knew that his challenge to the levy was false.

Although Nabaya asserts that he believed his claim against Stark was valid, he offered no evidence of this fact. In fact, Nabaya expressly declined to offer evidence or testimony. Thus, the only evidence before the jury was the testimony presented by the Government. We have reviewed the record and conclude that the evidence was sufficient for the jury to find that Nabaya knew or had reason to know that the mechanic's lien he filed against Stark was false, 18 U.S.C. § 1521, and that he filed a false statement in bankruptcy "knowingly and fraudulently," 18 U.S.C. § 152(3). Accordingly, the district court did not err in denying Nabaya's motion for judgment of acquittal.

*United States v. Nabaya*, 765 F. App'x 895, 897–98, 900–01 (4th Cir. 2019) (alteration in original).

In addition to the issues raised by counsel, Nabaya sought and obtained permission to file a *pro se* supplemental brief. *Id.* at 901. With respect to that brief the Fourth Circuit stated:

Nabaya includes in his brief copies of his motions filed in the district court asserting that (1) the criminal case should be dismissed because the prosecutors did not provide copies of their oaths of office demonstrating that they were authorized to represent the United States; (2) his prosecution was in violation of the First Amendment, and citing 26 U.S.C. §§ 6103(g)(4)(A), 7345(c) (2012); (3) his right to a speedy trial was violated;[9] (4) he was subjected to racial discrimination and fraud, and the misuse of federal funds; (5) his rights under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L.Ed.2d 215 (1963) were violated because he never received a copy of the statement of the offense filed by the injured party; and (6) the district court lacked subject matter jurisdiction over the prosecution and lacked personal jurisdiction over him. He also sought an injunction, asserting that no complaint, affidavit, court order, or statement of offense was filed against him and he is not guilty of any offense. We have reviewed the record and conclude that the district court appropriately denied Nabaya's motions in which he raised these arguments in the district court. We note that Nabaya was charged in a superseding indictment, which he acknowledged receiving and reviewing, and the district court read the entirety of the superseding indictment to Nabaya during his arraignment. Additionally, Nabaya's claims of discrimination are unfounded and unsupported in the record. Thus, although we grant Nabaya's motion for leave to file a pro se brief, we find no merit to the arguments raised therein.

*Id.* at 901–02.

## II. Analysis

### A. Claims One and Three (a) Are Barred

Claim One is barred from review here because the Fourth Circuit rejected the claim on direct review and Nabaya fails to direct the Court to an intervening change in the law that would warrant its reconsideration. *See United States v. Linder*, 552 F .3d 391, 396–97 (4th Cir. 2009) (citing cases); *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976). Accordingly, Claim One will be DISMISSED.

---

[9] Nabaya asserted that his right to a speedy trial under both the Sixth Amendment and the Speedy Trial Act had been violated. *United States v. Nabaya*, No. 18–4134 (4th Cir. filed Oct. 30, 2018) ECF No. 63–2, at 43.

6

In Claim Three (a), Nabaya complains that his right to call witnesses was violated when the Court denied his request for subpoenas.[10]  The Government correctly notes that, absent a showing of cause and prejudice or actual innocence, Claim Three (a) is barred from review here because Nabaya could have raised, but did not raise, this claim on direct appeal. *See Bousley v. United States*, 523 U.S. 614, 622–23 (1998).  Nabaya fails to advance any reasonable basis for excusing his default of Claim Three (a).[11]  Accordingly, Claim Three (a) will be DISMISSED.

## B. Ineffective Assistance of Counsel

To demonstrate ineffective assistance of counsel, a convicted defendant must show, first, that counsel's representation was deficient, and second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689).  The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  In analyzing ineffective

---

[10] Prior to trial, Nabaya filed five motions for subpoenas *ad testificandum* and *duces tecum*. (ECF Nos. 186–89, 193.)  The Government objected and the Court ultimately denied Nabaya's motions.  (ECF Nos. 199, 210 at 1.)

[11] In the space on the standardized form where Nabaya was asked to explain why he did not raise this claim on direct appeal, Nabaya stated, "I did not raise this issue because I did not have access to my discovery." (§ 2255 Mot. 7.)  Nabaya fails to explain, and the Court fails to discern, how lack of access to discovery material prevented him from raising Claim Three (a) on direct appeal.

assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

### 1. Stand-by Counsel

In *Faretta v. California*, the Supreme Court recognized a criminal defendant's Sixth Amendment right to represent himself *pro se* (the "*Faretta* right"). 422 U.S. 806, 819–20 (1975). The Supreme Court further stated, "a State *may*–even over objection by the accused–appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." *Id.* at 834 n.46 (emphasis added) (citation omitted).

"Although a criminal defendant has both a right to counsel and a right to represent himself, those rights are 'mutually exclusive.'" *United States v. Beckton*, 740 F.3d 303, 307 (4th Cir. 2014) (citing *United States v. Singleton*, 107 F.3d 1091, 1100 (4th Cir. 1997)). "[T]he appointment of standby counsel is discretionary; a defendant has no Sixth Amendment right to standby counsel after he knowingly and voluntarily waives his right to an attorney." *United States v. Archambault*, 740 F. App'x 195, 199 (2d Cir. 2018) (citing *United States v. Morrison*, 153 F.3d 34, 55 (2d Cir. 1998); *United States v. Schmidt*, 105 F.3d 82, 90 (2d Cir. 1997)); *United States v. Windsor*, 981 F.2d 943, 947 (7th Cir. 1992) ("This court knows of no constitutional right to effective assistance of standby counsel."). "Therefore, the inadequacy of standby counsel's performance, without the defendant's relinquishment of his *Faretta* right, cannot give rise to an ineffective assistance of counsel claim under the Sixth Amendment." *Simpson v. Battaglia*, 458 F.3d 585, 597 (7th Cir. 2006) (citing *Coleman v. Thompson*, 501 U.S. 722, 752 (1991); *Wainwright v. Torna*, 455 U.S. 586, 587–88 (1982)).

With respect to standby counsel, Bill Dinkin, Nabaya complains that: "Williams J. Dinkin did practice law with a convicted felon, Wesley H. Robinson," Claim 2(a), (§ 2255 at 5); "Dinkin told me to raise speedy trial issue on appeal," Claim 2(c), (*id.*); Dinkin "never assisted me in obtaining Jencks/Brady materials," Claim 2(e), (*id.*); "Dinkin never raised my *Batson* issues concerning a racially balanced jury. I raised that issue about 5 days before trial" Claim 2(f), (*id.*); and, "Dinkin lost my discovery while I was in custody at the Northern Neck Regional Jail," Claim (g), (*id.*). Because Dinkin merely served as standby counsel, Nabaya cannot bring a viable claim of ineffective assistance of counsel based on the performance of Dinkin. *Beckton*, 740 F.3d at 307 (citing *Singleton*, 107 F.3d at 1100); *Simpson*, 458 F.3d at 597 (citations omitted). Accordingly, these claims are subject to dismissal for that reason alone.

Even if one were to assume that Nabaya could bring a claim of ineffective assistance of counsel against standby counsel, Nabaya's claims fail under the traditional *Strickland* analysis. For example, in Claim 2(a), Nabaya complains that Dinkin practiced law with a convicted felon. Even if true, Nabaya fails to example how this prejudiced his defense. *See Sanders v. United States*, 373 U.S. 1, 19 (1963) (finding denial of § 2255 motion appropriate where it "stated only bald legal conclusions with no supporting factual allegations"). In Claim 2(c), Nabaya faults Dinkin for directing Nabaya to raise a speedy trial issue on appeal. Nabaya did raise a speedy trial on appeal. Therefore, Nabaya again fails to explain how he was prejudiced. Accordingly, Claims 2(a) and 2(c) will be DISMISSED.

In Claim 2(e), Nabaya chastises Dinkin for not assisting him in obtaining Jencks/Brady materials. As of September 5, 2017, the Government assured the Court that it had complied with its requirement under *Brady* and the Court found that Nabaya failed to present any evidence suggesting that the United States had not complied with *Brady*. (ECF No. 164, at 13–19.) The

Government further represented it would continue to meet its disclosure obligations under *Brady* and the Jencks Act. (*Id.* at 18–19 n.31.) Although Nabaya complains that Dinkin failed to assist him in obtaining *Brady* and *Jencks* Act material, he fails to demonstrate that he did not ultimately obtain all the material to which he was entitled under *Brady* and the *Jencks* Act. Therefore, Nabaya fails to demonstrate prejudice. Accordingly, Claim 2(e) will be DISMISSED. Relatedly, in Claim 2(g), Nabaya complains that Dinkin lost his discovery when he was confined in the Northern Neck Regional Jail. Nabaya fails to explain when this occurred or how it impaired his defense, if at all. At the inception of his trial, Nabaya assured the Court he was ready to proceed. (ECF No. 324, at 3.) Accordingly, Claim 2(g) will be DISMISSED because Nabaya fails to demonstrate prejudice.

Lastly, in Claim 2(f), Nabaya faults Dinkin for failing to raise "my *Batson* issues concerning a racially balanced jury." (§ 2255 Mot. 5.) Once again, Nabaya fails to articulate any facts suggesting he had a viable challenge under *Batson* or how counsel's lack of assistance prejudiced him. *Sanders v. United States*, 373 U.S. 1, 19 (1962) (observing that a court may summarily dismiss a claim that states only "bald legal conclusions with no supporting factual allegations"). At trial, Nabaya, proceeding *pro se*, advanced his own frivolous challenge to the racial composition of the jury.[12] (ECF No. 324, at 127–33.) Nabaya fails to articulate how further assistance from Dinkin could have led him to mount a successful challenge under *Batson*. Accordingly, Claim 2(f) will be DISMISSED because Nabaya fails to demonstrate prejudice.

## 2. Appellate Counsel

In Claim 2(b), Nabaya complains his appellate counsel, Alex F. Kochanowski, practiced law with Robinson, and that Robinson defrauded him of $20,000. In the context of the alleged

---

[12] Nabaya essentially argued that he would have liked to have more people of his race seated in the jury box. (ECF No. 324, at 127–33.)

ineffective assistance of appellate counsel, "the individual alleging ineffective assistance of appellate counsel 'must show a reasonable probability that, but for his counsel's [error], he would have prevailed *on his appeal*.'" *United States v. Allmendinger*, 894 F.3d 121, 131 (4th Cir. 2018) (citing *Smith v. Robbins*, 528 U.S. 259, 285–86 (2000)). Nabaya fails to explain how his appeal would have succeeded but for Kochanowski's cooperation with Robinson or Robinson's alleged fraud. Accordingly, Claim 2(b) will be DISMISSED.

In Claim 2(d), Nabaya complains that Kochanowski failed to raise speedy trial issues on appeal. Nabaya fails to demonstrate that any appeal on speedy trial grounds would have succeeded. As noted above, the Fourth Circuit rejected Nabaya's speedy trial claims raised in his *pro se* brief. Accordingly, Claim 2(d) will be DISMISSED because Nabaya fails to demonstrate prejudice.

In Claim 2(e), Nabaya contends that his appellate counsel "never assisted me in obtaining Jencks/Brady materials." (§ 2255 Mot. 5.) In Claim 2(h), Nabaya faults appellate counsel for failing to help him obtain his discovery material. (*Id.*) Nabaya fails to provide any facts indicating how he would have prevailed on appeal had he received appropriate assistance from counsel in obtaining these materials. Accordingly, Claims 2(e) and 2(h) will be DISMISSED because Nabaya fails to demonstrate prejudice.

### 3. Pretrial Counsel

In Claim 3(b), Nabaya complains that his pretrial "attorneys Joseph S. Camden and Mary E. Maguire never filed a bill of particulars . . . ." (§ 2255 Mot. 6.) "A bill of particulars identifies for the defendant the area within which the government's chief evidence will fall." *United States v. Fletcher*, 74 F.3d 49, 53 (4th Cir. 1996). The purpose of the bill of particulars "is to fairly apprise the defendant of the charges against him so that he may adequately prepare a

11

defense and avoid surprise at trial . . . not . . . to provide detailed disclosure of the government's evidence in advance of trial." *Id.* (omission in original) (quoting *United States v. Automated Medical Labs., Inc.*, 770 F.2d 399, 405 (4th Cir. 1985)). The bill of particulars "merely amplifies the indictment by providing missing or additional information so that the defendant can effectively prepare for trial." *Id.* (citations omitted).

Nabaya fails to explain why a bill of particulars was necessary in this instance. The charges against him were fairly straightforward. Nabaya has not articulated why he was unable to prepare for trial without a bill of particulars.[13] Nabaya fails to demonstrate that counsel performed deficiently or that he was prejudiced. Accordingly, Claim 3(b) will be DISMISSED.

In Claim 3(c), Nabaya faults counsel for failing to perform investigative work in his case. When a defendant contends that counsel conducted an inadequate investigation, he must proffer what a proper investigation would have revealed. *See Beaver v. Thompson*, 93 F.3d 1186, 1195 (4th Cir. 1996) ("[A]n allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced." (citing *Bassette v. Thompson*, 915 F.2d 932, 940–41 (4th Cir. 1990))); *see also United States v. Terry*, 366 F.3d 312, 316 (4th Cir. 2004) (emphasizing that a habeas petitioner must "provide[ ] concrete evidence of what [a witness] would have testified to in exculpation"). Nabaya fails to articulate what exculpatory evidence further investigative work would have yielded. Therefore, Nabaya fails to demonstrate deficiency or prejudice. Accordingly, Claim 3(c) will be DISMISSED.

---

[13] After Camden and Maguire withdrew, Nabaya, proceeding *pro se*, moved for a bill of particulars. (ECF No. 115.) The Court denied Nabaya's motion of a bill of particulars. (ECF No. 165.)

### III.  Outstanding Motions

#### A.  Motion to Supplement

In his Motion to Supplement, Nabaya seeks to add an additional claim for relief.  (ECF

No. 387.)  Leave to amend is appropriately denied where the amendment would be futile.  *See*

*United States v. Pittman*, 209 F.3d 314, 317 (4th Cir. 2000).  That is the case here.  Nabaya

asserts that he is entitled to relief because:

> The Plaintiff, United States, have not demonstrated that it has personal knowledge
> that movant has committed any crimes.  Without proof of personal knowledge the
> Court has no jurisdiction. *See* Fed. R. 602; *United States v. Wells*, 225 F. 320 (W.D.
> Tenn. 1913);[14] *United States v. Langsdale*, 115 F. Supp. 489 (W.D. MO 1953);[15]
> *United States v. Ruroede*, 220 F. 210 (S.D.N.Y 1914); *United States v. Baumert*,
> 179 F. 735 (N.D.N.Y. 1910).

---

[14] In *Wells*, the court stated:

> In addition, it seems to me that the proceeding in this case is irregular and
> unauthorized by law.   As has been seen, the district attorney prepared the
> information, filed it with the clerk of the United States District Court, which official
> thereupon issued the capias and summons for the defendant. The cases to which my
> attention has been called impress me with the idea that before a summons or capias
> is issued in cases of this character, wherein the defendant is charged with a crime
> upon a conviction for which he may be fined and imprisoned, the information
> should be presented to the judge, supported by the oath of some one having
> knowledge of the facts, showing the existence of probable cause. This evidence
> may be oral or by affidavits, upon the hearing of which the court may or may not
> cause the arrest of the accused, and have him brought before the court to answer
> the charge, just as he may believe that the evidence does or does not show probable
> cause.  In other words, before a citizen is arrested, there should be facts, sworn to
> and presented to the court, showing the existence of probable cause for such arrest.
>      I think the demurrer in this case should be sustained, and the information
> quashed, and the defendant discharged.

*Wells*, 225 F. at 322 (internal citation omitted).

[15] In *Langsdale*, the Court granted the defendant's motion to dismiss because "the United
States District Attorney did not have the personal knowledge required to sign the complaint; that
it did not justify the issuance of the warrant, and that the statute of limitations was not tolled by
the filing of said complaint; that the statute of limitations had run before the return of the
indictment by the grand jury."  115 F. Supp. at 493.

(ECF No. 387, at 1 (citation form corrected).).  Although hardly lucid, it appears from review of the above-cited cases that Nabaya contends his arrest warrant was invalid because it was not issued by someone having personal knowledge of his crimes and thus could not establish probable cause.

In Nabaya's case, the arrest warrant was issued after the grand jury had returned an indictment for Nabaya.  (ECF No. 1.)  "A warrant of arrest can be based upon an indictment because the grand jury's determination that probable cause existed for the indictment also establishes that element for the purpose of issuing a warrant for the apprehension of the person so charged."  *Giordenello v. United States*, 357 U.S. 480, 487 (1958).  "The willingness to let a grand jury's judgment substitute for that of a neutral and detached magistrate is attributable to the grand jury's relationship to the courts and its historical role of protecting individuals from unjust prosecution."  *Gerstein v. Pugh*, 420 U.S. 103, 117 n.19 (1975) (citing *United States v. Calandra*, 414 U.S. 338, 342—346 (1974)).  Accordingly, because it would futile to allow Nabaya to amend his § 2255 Motion to bring the above claim, his Motion to Supplement (ECF No. 387) will be DENIED.

### B. **Nabaya's Remaining Motions**

As has been his practice throughout these criminal proceedings, Nabaya has flooded the Court with a host of frivolous motions.  The Court has reviewed each of the motions.  These motions, whether they simply repeat Nabaya's previously rejected complaints or raise new disjointed allegation, do not entitle him to any relief.  Accordingly, Nabaya's Supplemental Motion to Grant 2255 Claim (ECF No. 376), Motion to Vacate an Illegal Sentence under 28 U.S.C. § 2255, Pursuant to Crim. Rules 12(b)(3)(B), 35(c) (ECF No. 494), Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2255, Motion to Vacate Sentence for Ineffective Assistance of

14

Appellate Counsel under Criminal Rule 32(i)(4)(ii) (ECF No. 499), 28 U.S.C. 2255/Compulsory

Counterclaim Motion to Dismiss for Lack of Art. III, Sec. 2, Cl. 1 Jurisdiction and Standing and

Mootness (ECF No. 519), 28 U.S.C. 2255/Compulsory Counterclaim Addendum Motion to

Dismiss for Mootness (ECF No. 523); 28 U.S.C. 2255/Compulsory Counterclaim Motion for a

Temporary Restraining Order Pursuant to Rule 65 (ECF No. 524), 28 U.S.C. 2255/Compulsory

Counterclaim Motion to Amend Omitted Defendants (ECF No. 525), 28 U.S.C.

2255/Compulsory Counterclaim Ex Parte Motion to Appoint Marshal to Serve Summons and

Complaint under (Fed. R. Civ. P. 4(c)(3)) (ECF No. 526), and 28 U.S.C. 2255/Compulsory

Counter Claim Motion to Dismiss Pursuant to Criminal Rule 4(b)(d) (ECF No. 529) will be

DENIED.

## IV.  Conclusion

Nabaya's claims and the action will be DISMISSED.  Nabaya's § 2255 Motion (ECF

No. 364) will be DENIED.  Nabaya's outstanding motions (ECF Nos. 376, 387, 494, 499, 519,

523–26, 529) will be DENIED.

An appeal may not be taken from the final order in a § 2255 proceeding unless a judge

issues a certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1)(B).  A COA will not issue

unless a prisoner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C.

§ 2253(c)(2).  This requirement is satisfied only when "reasonable jurists could debate whether

(or, for that matter, agree that) the petition should have been resolved in a different manner or

that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Slack v.*

*McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4

(1983)).  Nabaya has not satisfied this standard.  A certificate of appealability will be DENIED.

An appropriate Order shall accompany this Memorandum Opinion.

/s/

_____
M. Hannah Lauck
United States District Judge

Date: 8-19-2022
Richmond, Virginia

16